Case 1:20-cv-01206-BPG   Document 10   Filed 05/13/20   Page 5 of 76
Case 1:20-cv-01206-JKB   Document 10   Filed 05/13/20   Page 5 of 76
E-FILED Harford Circuit Court
Docket: 3/26/2020 2:12 PM; Submission: 3/26/2020 2:12 PM

| | | |
|---|---|---|
| JEFFREY ANDREW LEDERGERBER,<br>101 Lexington Road<br>Bel Air, Maryland 21014, | * | IN THE CIRCUIT COURT |
| | * | FOR HARFORD COUNT |
| *And* | * | CIVIL DIVISION |
| JAMES FRANKLIN BAKER,<br>229 Rosewood Drive<br>Edgewood, Maryland 21040, | * | C-12-CV-20-000289 |
| | * | Case No.: _____ |
| *And* | * | |
| EDWARD THOMAS WOLF,<br>8 Glenville Road<br>Churchville, Maryland 21028, | * | |
| | * | |
| *And* | * | |
| CHARLOTTE FREDA WOLF,<br>918 Prospect Mill Road<br>Bel Air, Maryland 21204, | * | |
| | * | |
| *Plaintiffs,* | * | |
| v. | * | |
| CORPORAL JUSTIN L. BLUBAUGH,<br>*Individually and in his Capacity as<br>Harford County Sheriff's Deputy,*<br>HARFORD COUNTY SHERIFF'S OFFICE<br>45 South Main Street<br>Bel Air, Maryland 21014, | *<br><br>*<br><br>*<br><br>* | |
| *And* | * | |
| SHERIFF JEFFREY R. GAHLER,<br>*Individually and in his Capacity as<br>Harford County Sheriff,*<br>HARFORD COUNTY SHERIFF'S OFFICE<br>45 South Main Street<br>Bel Air, Maryland 21014, | *<br><br>*<br><br>* | |
| *And* | * | |
| HARFORD COUNTY SHERIFF'S OFFICE,<br>45 South Main Street | * | |

Bel Air, Maryland 21014,                          *

     *And*                                                *

HARFORD COUNTY, MARYLAND,                 *
220 South Main Street
Bel Air, Maryland 21014,                          *

    *Serve On: County Attorney*              *
    Melissa Lambert, Esquire
    220 South Main Street                        *
    Bel Air, Maryland 21014,
                                   *

    And                                                *

STATE OF MARYLAND,                             *
c/o Nancy K. Kopp, State Treasurer
GOLDSTEIN TREASURY BUILDING                     *
80 Calvert Street                                  *
Annapolis, Maryland 21401,                     *

    *Serve On: Resident Agent*                 *
    Brian E. Frosh, Esq.,                          *
    ATTORNEY GENERAL OF MARYLAND
    200 Saint Paul Place                          *
    Baltimore, Maryland 21202
                                    *

    *Defendants.*
*    *    *    *    *    *    *    *    *    *    *    *

## COMPLAINT & JURY DEMAND

    Plaintiffs Jeffrey Andrew Ledergerber, James Franklin Baker, Edward Thomas Wolf, and Charlotte Freda Wolf, by and through their attorneys, David C.M. Ledyard and Ledyard Law LLC, file suit against Defendants Corporal Justin L. Blubaugh, Sheriff Jeffrey R. Gaylor, Harford County Sheriff's Office, Harford County, Maryland, and the State of Maryland, and state the following in support thereof:

### THE PARTIES

    1.    Plaintiff Jeffrey Andrew Ledergerber, is and was, at all times relevant, a resident of Harford County, Maryland.

    2.    Plaintiff James Franklin Baker, is and was, at all times relevant, a resident of Harford County, Maryland.

Case 1:20-cv-01208-JKB   Document 5   Filed 05/13/20   Page 3 of 41

3.      Plaintiff Edward Thomas Wolf, is and was, at all times relevant, a resident of Harford County, Maryland.

4.      Plaintiff Charlotte Freda Wolf, is and was, at all times relevant, a resident of Harford County, Maryland.

5.      Defendant Corporal Justin L. Blubaugh is and was, at all times relevant, a Deputy Sheriff with the Harford County Sheriff's Office. Corporal Blubaugh is being sued in both his individual capacity for his actions and the actions of his agents, servants, and employees and in his official capacity as a policymaker for the Harford County Sheriff's Office – as further described below.

6.      Defendant Sheriff Jeffrey R. Gahler is and was, at all times relevant, the Sheriff of Harford County, Maryland. Sheriff Gahler is being sued in both his individual capacity for his actions and the actions of his agents, servants, and employees and in his official capacity as a policymaker for the Harford County Sheriff's Office – as further described below.

7.      Defendant Harford County Sheriff's Office, is and was, at all times relevant, a law enforcement agency responsible for providing professional police to the citizens of Harford County. In this respect, the Harford County Sheriff's Office acted through its agents, servants, and employees, and was responsible for the conduct of the agents, servants and employees of Harford County Sheriff's Office.

8.      Defendant Harford County, Maryland, is and was, at all times relevant, a Charter County in the State of Maryland and a body corporate and politic. In this respect, the Harford County acted through its agents, servants, and employees, and was responsible for the conduct of the agents, servants and employees of Harford County, Harford County Sheriff's Office, and individual Defendants.

9.      Defendant the State of Maryland is and was, at all times relevant, a political body in the United States of America. In this respect, the State of Maryland acted through its agents, servants, and employees, and was responsible for the conduct of the agents and employees of the State of Maryland, Harford County Sheriff's Office, and individual Defendants.

10.     Defendants Corporal Justin L. Blubaugh, Sheriff Jeffrey R. Gaylor, Harford County Sheriff's Office, Harford County, Maryland, and the State of Maryland, and their agents, servants, and employees are singularly referred to as "Defendant" or "Governmental Entity" or collectively referred to as "Defendants" or "Governmental Entities.

JURISDICTION & VENUE

11.     This Court has personal jurisdiction over the Defendants pursuant to Maryland Code, Courts & Judicial Proceedings, § 6-103, because the cause of action arose in Maryland.

12.     This Court has subject matter jurisdiction over the Defendants pursuant to Maryland Code, Courts & Judicial Proceedings, § 4-401(1), because the amount in controversy is greater than thirty-thousand dollars ($30,000.00).

13.     Venue lies with this Court pursuant to Maryland Code, Courts & Judicial Proceedings, § 6-201(a), because Defendant(s) reside, carry on a regular business, are employed, and habitually engage in a vocation in this County; Maryland Code, Courts & Judicial Proceedings, § 6-201(b) because there is more than one defendant, and there is no single venue applicable to all defendants under Maryland Code, Courts & Judicial Proceedings, § 6-201(a), so all may be sued in this County, which any one of them could be sued; and Maryland Code, Courts & Judicial Proceedings, § 6-202(8), because this is a tort action based on negligence arising in this County.

## *FACTS COMMON TO ALL COUNTS*

14.     Pursuant to Maryland Rule 2-303(c), Plaintiff(s) set(s) forth multiple counts and prayers for relief regardless of consistency.

### *Compliance with the Law is <u>Never</u> a Crime*

15.     Defendants Corporal Justin L. Blubaugh, Sheriff Jeffrey R. Gaylor, Harford County Sheriff's Office, Harford County, Maryland, and the State of Maryland unlawful attempt to criminalize Plaintiffs Jeffrey Andrew Ledergerber, James Franklin Baker, Edward Thomas Wolf, and Charlotte Freda Wolf lawful and law-abiding behavior.

Most citizens are well-respected for following the law, particularly when the law imposes a duty on those citizens. In this case, Defendants attempted to criminalize that behavior. The only evidence in this case evinces Plaintiffs' compliance with the legal duties and responsibilities. There is no evidence that Plaintiffs broke those law – and Plaintiffs were not charged with breaking those laws. Frustrated by those facts, Defendants charged Plaintiffs with breaking another law without any supporting evidence.

Rightfully, those attempts failed.

Unfortunately, the attempts to charge Plaintiffs with crimes they did not commit, without any evidence to support those charges, and without probable cause created considerable wreckage in Plaintiffs' lives.

This case is about righting those wrongs, cleaning up that wreckage, clearing Plaintiffs' names, and clearing a path forward for Plaintiffs in the future.

### *The Plaintiffs*

16.     At all times relevant, Plaintiff Jeffrey Andrew Ledergerber owned and operated a *Starlite Coin and Pawn LLC*, which was located at 1812-N Pulaski Highway, Edgewood, Maryland 21040. Jeff has been in the pawn business for over fifteen years.

17.     At all times relevant, Plaintiff Edward Thomas Wolf, owned and operated a *Associated Pawn Brokers, Inc.*, which was located at 1851 Pulaski Highway, Edgewood, Maryland 21040. Ed has owned this business for over 10 years.

18.     At all times relevant, Plaintiffs James Franklin Baker and Charlotte Fred Wolf were employed at Associated Pawn Brokers. James entered the pawning business in 2001.

### *Pawn Shops in the State of Maryland and Harford County*

19.     Pawn shops serve a vital role in their local communities. Although pawn shops can engage in a variety of transactions with customers, the pawn shop traditionally serves individuals in the community who lack the credit or proper "collateral" to secure short-term or long-term lending from traditional banking institutions. Most pawn shops are traditional "Mom and Pop" small businesses who know the community in which they operate and are very much a part of the community.

20.     In the typical transaction, a customer brings an item to the pawn shop to use as collateral for a loan. The pawn shop appraises the item and assigns a value. If the customer accepts the value, the pawn shop then provides cash to the customer in the form of a loan. A payment schedule is agreed upon between the parties. If the customer adheres to the payment schedule, they get their collateral back. If they fail to meet the terms, then the collateral is forfeited and the pawn shop sells the item to recoup its loss on the loan. This system traces its origins to the ancient Greek and Roman empires.

21.     The volume of loans a pawn shop participates in can fluctuate. However, for example, Plaintiff James Baker estimates that almost half of his transactions during his "pawning" career were loans.

22.     Among other things, pawn shops also deal with the buying and selling of goods and the precious metal trade.

23.     For example, in this case, a seller would enter either Associated or Starlite with an item for sale. Plaintiffs would examine the item and determine whether or not they could resell it. If Plaintiffs determined that they could resell it, then they would search various internet sites to determine the price. The sites most commonly used by Plaintiffs included, but were not limited to, Craigslist, eBay, or Facebook. Typically, Plaintiffs would offer a percentage of the price found on the internet, usually 50%. If the seller accepted the price, then the Plaintiffs would begin the legally required PAPERWORK.

### The Burdensome Pawn Shop Regulatory Scheme

24.     Pawn shops are heavily regulated in the State of Maryland. Their operation is controlled by the Maryland Code, the Code of Maryland Regulations, and local laws that can vary from jurisdiction to jurisdiction. In this case, the Harford County Code governed Plaintiffs – and the legislative scheme governing this case was first enacted in 1975.

25.     These regulations require each shop, among other things, to obtain a license, conduct a background check on certain employees, and fill out a mountain of paperwork with each transaction.

26.     When it comes to the buying and selling of goods by pawn shops, State and Local law *requires* pawn shops to assume that the item being sold to the pawn shop is stolen and that the seller is a thief.

27.     As a result of this legally imposed assumption, at all times relevant, for each and every purchase made by Associated and Starlite, Plaintiffs were required to enter the following information into a database by noon the following day:

        a.  Jurisdiction of the Transaction

        b.  Type of Transaction

        c.  Date of the Transaction

        d.  Time of the Transaction

Case 1:20-cv-01208-JKB   Document 10   Filed 05/13/20   Page 7 of 41

e. Seller's Last Name

f. Seller's First Name

g. Seller's Middle Name (if any)

h. Suffix of Seller's Name (if any)

i. Alias of Seller (if any)

j. Seller's Date of Birth

k. Seller's Vehicle Make

l. Seller's Vehicle Model

m. Seller's Birth Place

n. Seller's Gender

o. Seller's Height

p. Seller's Weight

q. Seller's Eye Color

r. Seller's Hair Color

s. Seller's Race

t. Seller's Facial Hair

u. Seller's Build

v. Any "distinguishing characteristics" of Seller

w. Seller's Fingerprints (if capable)

x. Seller's Signature

y. A Declaration of Ownership (of the Item) by Seller

z. Seller's Address (including city, state, and zip code)

aa. Seller's Telephone Number

bb. Seller's Identification Number (e.g. Driver's License Number)

cc. Dealer's Name

dd. Dealer's Address (including city and state)

ee. Dealer's Phone Number

ff. Employee's license number

gg. Employee's name

hh. Ticket Number

ii. Receipt Number

jj.  Transaction Source

kk. Transaction ID

ll.  Transaction Classification

mm.        Transaction Sub-Class

nn. Item Manufacturer

oo. Item Model

pp. Item Serial/VIN

qq. Vehicle Registration State ID

rr.  Vehicle Color

ss.  Vehicle Title Number

tt.  Quantity of Goods Sold

uu. Value of Goods Sold

vv. Total Price of Goods Sold

ww.        Item Size/Year

xx. Item Gender

yy. Item Markings – Item Description

zz.  Item on Hold

aaa.        Item Number

bbb.        Item's Condition

28.     Furthermore, Plaintiffs were required to create a paper transaction slip and submit that slip to the Harford County Sheriff's within a week of the transaction.

29.     All pawn shop transactions in Maryland are entered into a statewide database called the RAPID Dealer Reporting Site ("Regional Automated Pawn Information Database"). The Maryland State Police maintain and operate this database.

30.     As discussed further below, for all transactions relevant to this case, Plaintiffs filled out the paperwork before purchasing the items at issue. This process took up to 45 minutes.

31.     Once the paperwork is complete, the seller would sign a document attesting that the seller was the owner of the item (attesting that the item was not stolen).

32.     For all transactions relevant to this case, Defendants do not dispute that Plaintiffs complied with these requirements.

33.     After all of the paper work was complete, the Plaintiffs would hand cash to the owner.

34.     All the transaction was complete for the seller, the process was just starting for the Associated and Starlite. By law, a pawn shop must hold onto each item bought for at least 30 days to allow law enforcement to investigate its ownership and origins before the item is released to the pawn shop for (hopefully) resale.

35.     If law enforcement had a question or suspicion about the origins of an item sold to the pawn shop or opened an investigation into the origins of such an item, law enforcement would place an additional "hold" on the item. The item could not be sold until the law enforcement hold was removed.

36.     Finally, law enforcement had the legal right to take possession of any item that was suspected to be stolen.

37.     Again, for all transactions relevant to this case, Defendants do not dispute that Plaintiffs complied with all of the legal requirements imposed by law.

38.     Pawn shops that purchase stolen goods will quickly go out of business – they lose twice in each transaction. First, the shops lose money by purchasing goods from thieves. Second, the shops lose the item purchased when law enforcement seizes it and (hopefully) returns it to its lawful owner.

### The Unrelated Heroin Epidemic in Harford County

39.     Since the turn of the new millennium, Harford County experienced more opoid-related overdoses and overdose-related deaths per capita when compared with both the State of Maryland as a whole and the United States of America as a whole. Tragically, Harford County has an opioid problem.

40.     Starting in 2013, this grim statistic took a turn to the worse when the number of opioid-related overdoses and deaths began to spike upwards in Harford County.

### Patrick Vincent Humes

41.     At all times relevant, there were seven pawn shops operating in Harford County, Maryland, including Associated and Starlite.

42.     According to Corporal Blubaugh, there are thousands of transactions entered into the RAPID database at any given time. In addition to these entries, pawn shops across Harford County submit stacks of paperwork to the Pawn Unit of the Harford County Sheriff's Office each week.

43.     As a result of the data entered into the RAPID database by Starlite, Associated, and other pawn shops across the State of Maryland in compliance with state and local law, law enforcement can search the database for, among other things, individuals with a high volume of transactions ("Top Pawners"), individuals that law enforcement suspects of thefts, or the activity of known thieves (to check on their recent activity). This is the starting point of most investigation.

44.     At all times relevant, Patrick Vincent Humes lived in Railroad, Pennsylvania. He was a heroin addict. He would drive down to Maryland and purchase heroin in Baltimore City with his nephew.

45.     To help finance his addiction, Patrick Humes would occasionally steal items from "Big Box" stores in Baltimore and Harford Counties.

46.     At the end of June 2015, Patrick Humes was caught attempting to steal from a Home Depot in Harford County, Maryland.

47.     Mr. Humes was questioned by store personnel and the Harford County Sheriff's Office, but released without any charges despite admitting that he had stolen multiple items from multiple stores across Harford County to help finance his addiction.

48.     Unsurprisingly, Mr. Humes later confessed that he committed additional thefts after the June 2015 incident at Home Depot.

### The Investigation into Patrick Vincent Humes

49.     Sheriff Gahler was elected in 2014 to lead the Harford County Sheriff's Office after campaigning on a promise to fight the "scourge" of addiction blighting Harford County. In fact, after winning the election, he focused his inauguration speech on this topic.

50.     At all times relevant, Corporal Blubaugh was assigned to the Criminal Investigations Division ("CID") of the Harford County Sheriff's Office and was the head of the "Pawn Unit." His unit consisted of himself, a civilian secretary, and 11 detectives. Corporal

Blubaugh was certified by the Maryland State Police to administer the RAPID system for Harford County.

51.     At the end of July 2015, four weeks after Patrick Humes' initial detention, Corporal Blubaugh questioned Patrick Humes at the police station.

52.     During this interview, Patrick Humes admitted to stealing countless items from business across Maryland and even in Pennsylvania. He admitted up to 100 thefts to Corporal Blubaugh.

53.     Patrick Humes sold the stolen items on the street, under the table, and to several Baltimore-area pawn shops.

54.     Patrick Humes also admitted that he sold personal items and items that were not stolen to Baltimore-area pawn shops.

55.     Patrick Humes could not recall what items were stolen. He could not recall when and where he stole most items. He could not recall when and where he sold most items. Regarding pawn shops, he could not recall (a) which items he sold to which pawn shops; (b) whether or not these items were stolen; and (c), if the items were stolen, where he had stolen them from.

56.     Fortunately, Corporal Blubaugh came prepared to the interview. Due to Associated and Starlite's compliance with state and local laws, these shops entered the details of every transaction with Patrick Humes into the RAPID database (several other pawn shops entered details as well).

57.     As a result, Corporal Blubaugh checked with local businesses to confirm whether or not they were missing any of the items Patrick Humes sold to Associated and Starlite (or other pawn shops). Some local businesses, including Home Depot, responded affirmatively.

58.     Associated and Starlite lost money on both ends of the transaction – the money paid to Patrick Humes and, eventually, some of the goods Patrick Humes sold to Associated and Starlite that local businesses confirmed were missing.

### *The Patrick Humes Investigation Takes An Ugly Turn*

59.     Unsatisfied with Patrick Humes confession to countless thefts and the return of stolen merchandise, Corporal Blubaugh attempted to lead Patrick Humes into implicating Associated and Starlite in the thefts – despite both Associated and Starlite:

(a) complying with state and local law by entering the details of every transaction with Patrick Humes into the RAPID database;

(b) conducting every transaction with Patrick Humes above board – entering the details of every transaction with Patrick Humes into the RAPID system – instead of conducting business under the table, off the books, and off the database; and

(c) cooperating in the investigation by identifying and surrendering merchandise that the Harford County Sheriff's Office, Corporal Blubaugh, and Sheriff Gahler placed a hold on and seized.

60.    Patrick Humes quickly obliterated Corporal Blubaugh's unfounded, unsupported, and incorrect line of questioning and accusations.

61.    Patrick Humes stated that selling to Associated or Starlite was exasperating. These pawn shops required significantly more work to anyone else he sold to – whether under the table or not. His transactions at the Associated and Starlite lasted around 45 minutes. This was due to both Associated and Starlites strict compliance with state and local reporting laws.

62.    Patrick Humes explained that he would take an item into Starlite or Associated. He was not looking for anyone in particular at the shop to deal with – just anyone who could complete the transaction. After looking over the item to determine whether or not they wanted it, the employee would look on the computer for a price and would offer him half of that price. He never tried to negotiate for more money – he believed that the price was fair and reasonable. Before completing the transaction, the employee always took his driver's license and filled out the paperwork. He then signed an affidavit of indicating that he was the owner of the property he was selling. Next, he was offered a receipt. He did not always take one. If he did, he threw the receipt away once he left the store.

63.    Furthermore, Patrick Humes also believed the entire transaction was captured on security cameras.

64.    After he dealt with Charlotte a few times on his visits to Associated, she asked him where he got the new merchandise. Mr. Humes replied that he was a wholesaler looking to offload some unwanted items.

65.    Patrick Humes denied that Associated, Starlite, or Plaintiffs expressed any "needs" for particular items, and he denied that they ever instructed or told him what items to bring to the store.

66.     He described Jeff, Ed, James, or Charlotte as nice people. He felt bad for stealing and selling stolen merchandise to unsuspecting pawn shops like Associated and Starlite. He wanted to apologize to them for any inconvenience he had caused him. Corporal Blubaugh told him not to apologize or speak to them after the interview.

67.     Despite being charged with felony forgery at the time of his interview (a charge he later pled guilty to) and admitting to stealing a significant quantity of merchandise to feed his heroin addiction, Corporal Blubaugh released Patrick Humes after the interrogation.

68.     Despite admitting to stealing a significant quantity of merchandise to feed his heroin addiction – including committing thefts after he was initially detained in June 2015 for attempted theft at Home Depot, Patrick Humes was never charged with any crimes. Tragically, Patrick Humes later died of an overdose.

69.     Corporal Blubaugh later spoke with Charlotte when he seized the allegedly stolen items – she confirmed that Patrick Humes told her that he was a wholesaler.

### The Criminal Charges Against Plaintiffs

70.     No evidence linked Jeff, Ed, James, or Charlotte to the drug trade or the heroin/opioid epidemic sweeping Harford County.

71.     Jeff, Ed, James, and Charlotte complied with Maryland and Harford County law by completing and submitting reports to the RAPID database and the Harford County Sheriff's Office in a timely manner for each transaction with Patrick Humes.

72.     Furthermore, Patrick Humes denied that Plaintiffs, Associated, or Starlite ever requested Patrick Humes "bring" (steal) them certain items.

73.     Finally, Patrick Humes complained that transactions with Plaintiffs, Associated, and Starlite were painful because Plaintiffs complied with Maryland and Harford County law by completing the required reports, always taking his identification, making him sign a document confirming his ownership of the items, and searching the internet for the item's price. Furthermore, he believed all transactions took place out in the open and on camera. Niether Plaintiffs, nor Associated, nor Starlite were ever accused of completing off-the-books transactions with Patrick Humes.

74.     In fact, Patrick Humes felt bad for selling stolen goods to Plaintiffs, Associated, and Starlite – and wanted to apologize for deceiving them.

75.     Despite no evidence implicating any Plaintiff in any crime, Corporal Blubaugh charged each Plaintiff with two felonies: (a) Theft-Scheme: $1,000.00 to Under $10,000.00 and (b) Theft: $1,000.00 to Under $10,000.00 for thefts by Patrick Humes *only* at Harford County Home Depots *only* taking place *only* between January 1, 2015 and October 31, 2015.

76.     As a result, Plaintiffs were detained by the Harford County Sheriff's Office, Sheriff Gahler, and/or Corporal Blubaugh, and/or their agents, servants, employees or assigns.

77.     At all times relevant, Plaintiffs were detained against their will and did not consent to their detention.

### *Criminal Proceedings Against Plaintiffs*

78.     An arrest warrant was issued on March 29, 2017, for Charlotte Frida Wolf and was served on March 30, 2017. The case against her was styled *State of Maryland v. Charlotte Frida Wolf*, Harford County Circuit Court Case Number 12-K-17-000520. Upon a defense motion at the end of the State of Maryland's case, a judgment of acquittal was entered on March 2, 2018. For the reasons stated in this Complaint, Plaintiffs contend that this warrant was issued without probable cause, that no probable cause or evidence existed to charge Plaintiffs, and that the criminal proceedings against each Plaintiff were completely unjustified, unsubstantiated, and unfounded.

79.     An arrest warrant was issued on March 29, 2017, for Edward Thomas Wolf and was served on March 31, 2017. The case against him was styled *State of Maryland v. Edward Thomas Wolf*, Harford County Circuit Court Case Number 12-K-17-000520. A *nolle prosequi* was entered by the State of Maryland on March 7, 2018. For the reasons stated in this Complaint, Plaintiffs contend that this warrant was issued without probable cause, that no probable cause or evidence existed to charge Plaintiffs, and that the criminal proceedings against each Plaintiff were completely unjustified, unsubstantiated, and unfounded.

80.     An arrest warrant was issued on March 29, 2017, for James Franklin Baker and was served on March 30, 2017. The case against him was styled *State of Maryland v. James Franklin Baker*, Harford County Circuit Court Case Number 12-K-17-000493. A *nolle prosequi* was entered by the State of Maryland on March 13, 2018. For the reasons stated in this Complaint, Plaintiffs contend that this warrant was issued without probable cause, that no

probable cause or evidence existed to charge Plaintiffs, and that the criminal proceedings against each Plaintiff were completely unjustified, unsubstantiated, and unfounded.

81.     An arrest warrant was issued for Jeffrey Ledergerber on March 29, 2017, and was served on April 3, 2017. The case against him was styled *State of Maryland v. Jeffrey Andrew Ledergerber* Harford County Circuit Court Case Number 12-K-17-000508. Upon a defense motion at the end of the State of Maryland's case, a judgment of acquittal was entered on June 7, 2019. For the reasons stated in this Complaint, Plaintiffs contend that this warrant was issued without probable cause, that no probable cause or evidence existed to charge Plaintiffs, and that the criminal proceedings against each Plaintiff were completely unjustified, unsubstantiated, and unfounded.

### *No Probable Cause*

82.     Jeff, Ed, James, and Charlotte complied with Maryland and Harford County law by completing and submitting reports to the RAPID database and the Harford County Sheriff's Office in a timely manner for each transaction with Patrick Humes.

83.     Neither Jeff, Ed, James, nor Charlotte were charged with violating either Maryland or Harford County laws regulating pawn shops. Nor were Plaintiffs charged with failing to record any transactions or conducting any "off the books" (under the table) transactions with Patrick Humes. Defendants do not even make such allegations.

84.     Furthermore, Patrick Humes denied that Plaintiffs, Associated, or Starlite ever requested Patrick Humes "bring" (steal) them certain items.

85.     Finally, Patrick Humes complained that transactions with Plaintiffs, Associated, and Starlite were painful because Plaintiffs complied with Maryland and Harford County law by completing the required reports, always taking his identification, making him sign a document confirming ownership, and searching the internet for the item's price. Furthermore, he believed all transactions took place out in the open and on camera.

86.     There is no evidence of collaboration or collusion between Mr. Humes and Plaintiffs and all parties denied such.

87.     In fact, Patrick Humes felt bad for selling stolen goods to Plaintiffs, Associated, and Starlite and wanted to apologize for deceiving them. Corporal Blubaugh prevented him from doing so.

88.     Patrick Humes denied that every item sold to Plaintiffs, Associated, or Starlite was new and that he had difficulty remembering which items were actually stolen and from what Big Box store he had stolen them.

89.     Regarding the new items that were allegedly stolen, Patrick Humes did not attempted to cover up his alleged thefts by removing serial numbers or making the items look used. In fact, Plaintiffs took photographs of the items.

90.     In fact, Corporal Blubaugh admits it is difficult to process the number of transactions taking place at pawn shops – and there is no indication that Plaintiffs could either. When Charlotte recognized Patrick Humes at her store, he admitted that he told her that he was a wholesaler. Had Plaintiffs not complied with State and/or Local Law in reporting the transactions with Patrick Humes, Corporal Blubaugh would have never been able to run Patrick Hume's name through RAPID and solve the numerous thefts that he had committed.

91.     In an awful twist of fate, Corporal Blubaugh used the data Plaintiffs provided to catch Patrick Humes to charge Plaintiffs (not Humes) with theft – despite the lack of any evidence that Plaintiffs had committed any crime. To the contrary, the only evidence indicated that Plaintiffs fully complied with the requirements under the law.

92.     Finally, Plaintiffs were deprived possession of the goods they purchased from Patrick Humes – that he allegedly stole and sold to Plaintiffs. Plaintiffs gained nothing from Mr. Humes' theft and lost the money paid to Mr. Humes. To add insult to injury, the items Mr. Humes allegedly stole from Home Depot had no value – Home Depot destroyed, not resold, the items.

### *What Pawn Shop Fraud Looks Like*

93.     As head of the Pawn Unit, Corporal Blubaugh knows that pawn shop fraud looks like. At its most basic, it is under-the-table, unreported buying of stolen merchandise by a pawn shop. Corporal Blubaugh had no evidence Plaintiffs engaged in similar activity in this case. As a career law enforcement officer, Sheriff Gahler is also aware of what pawn shop fraud looks like.

94.     Furthermore, both Sheriff Gahler and Corporal Blubaugh are familiar with pawn shops recruiting thieves to steal specific in-demand items that can be resold easily. Again, neither Sheriff Gahler, nor Corporal Blubaugh had any evidence that Plaintiffs engaged in similar activity in this case – because they did not.

95.     Finally, Corporal Blubaugh has investigated and charged pawn shops in the past and is familiar with the details of *United States v. Jerome Ira Stal*, a $20 million money laundering scheme involving at least 18 Baltimore Area pawnbrokers. In that case, the pawn shops worked directly with thieves to steal and "clean" stolen merchandise in order to resell it to unsuspecting buyers. Numerous techniques were used to remove security features and identification from the stolen products to make them available for resale. This explains Corporal Blubaugh's questioning of Patrick Vincent Humes after he had confessed to the countless thefts.

96.     Sheriff Gahler is intimately familiar with pawn shop fraud and the investigatory techniques as well.

### The Harm Suffered by Plaintiffs

97.     The criminal charges brought against Jeff, Ed, James, and Charlotte impacted their lives in devastating and profound ways. Below are some examples.

98.     At the direction of Sheriff Gahler and Corporal Blubaugh, the Harford County Sheriff's Office issued a press release detailing the accusations against Jeff, Ed, James, and Charlotte. Their photos, names, addresses, and ages were released to the general public as well.

99.     News of the charges ran on Facebook (a Press Release from the Harford County Sheriff's Office Facebook Page and various news media Facebook pages), on television (WMAR - ABC, WJZ - CBS, WBAL - NBC, and WBFF – "FOX 45"), and in print media (The Harford Aegis, the Baltimore Sun, the Chicago Tribune, Yahoo News, and the Bel Air Patch).

100.    Plaintiffs and their families were subject to numerous disparaging, hateful, untrue, and negative comments from friends, acquaintances, and strangers both online and in person.

101.    Despite no evidence linking Jeff, Ed, James, or Charlotte to the drug trade or the heroin/opioid epidemic sweeping Harford County, Sheriff Gahler and Corporal Blubaugh made comments at a press conference and to news media implicating Plaintiffs in the overdoses, overdose-related deaths, the heroin epidemic, and the opioid epidemic plaguing Harford County. But not a single charge against the Plaintiffs dealt with opioids.

102.    Plaintiffs had become an unwitting victim in the latest salvo of the "War on Drugs." As a direct result of the press release and press conference by the Haford County Sheriff's Office, Sheriff Gahler, and Corporal Blubaugh, the community where they lived and

did business now perceived them as heroin dealers – part of the scourge enveloping Harford County.

103.    Furthermore, Defendants implicated Plaintiffs in thefts around Harford County outside the facts of this case by suggesting/implying/juxtaposing credit card theft, "mugging" type theft, purse snatching, robberies, and home/business break-ins and Plaintiffs actions.

104.    Plaintiffs had become an unwitting victim of criminal activity in Harford County.

105.    Plaintiffs incurred attorneys fees fighting these charges.

106.    Plaintiffs and their families had to shut down communication with the outside world.

107.    Due to the financial strain and the stress of the looming criminal charges, Jeff and his wife separated and eventually divorced.

108.    Plaintiff James Baker's wife, Katie, had worked at McDonald's in Harford County for more than 25 years. She had worked for a store 3 miles from her home for 10 years. McDonald's had recruited her to help open new stores, she received awards for her job performance, and taught classes for other employees. After her husband was charged with theft – in what appeared to be drug-related activity – she faced immediate backlash at work. Her working environment deteriorated as her co-workers, subordinates, and superiors distanced themselves from her. She was eventually given an ultimatum: resign or be fired. She had done nothing wrong, so she refused to resign. She was terminated.

109.    Plaintiffs faced the loss of their licenses to operate and work at the pawn shops and could not get bonded with pending criminal charges.

110.    Plaintiff James Baker was scared of the repercussions. His livelihood, freedom, and family were on the line. He left his job and was unable to find a job paying what he used to earn at the pawn shop.

111.    James was also part of a non-profit foundation, Hogs and Heroes, which supports public safety officials (including law enforcement officers), wounded warriors, and fallen soldiers. He did not feel welcome until after the charges were dropped against him.

112.    While at Bella Pizza, a customer recognized James Baker from the press release and called the police. The police confronted James – some with guns drawn – until he was able to explain that he was out on bail awaiting the trial.

113.     Jeff, Ed, and Charlotte all experienced a decline in business due to the loss of their professional reputation within the community while the charges were pending.

114.     Ed's wife eventually filed for divorce.

115.     Ed and Charlotte both faced foreclosure.

116.     Even after the charges were dropped, Ed faced financial difficulties and had to close his store.

117.     Plaintiffs sustained bodily injury (from detention) and psychological trauma as a result of this incident.

118.     Finally, Plaintiffs were never provided with an itemization or inventory of the final disposition of goods that were seized from Associated and Starlite. As a result, Sheriff Gahler, Corporal Blubaugh, and the Harford County Sheriff's Office seized items purchased and owned by Plaintiffs without providing just compensation. In sum, Defendants have not provided any proof that compensation is not owed to Plaintiffs as a result of this taking.

### *The Final Analysis*

119.     As described above, Plaintiffs are still picking up the pieces from the wreckage caused by Defendants' actions. Actions that had a deep, profound, and lasting impact on Plaintiffs' lives.

120.     Unfortunately, these charges and cases had no impact on the overdoses or overdose-related deaths in Harford County.

121.     In fact, in the one instance that Sheriff Gahler, Detective Blubaugh, and the Harford County Sheriff's Office had an opportunity to make a direct impact on both the life of an individual and the community, they uttlery failed. Patrick Humes died of an overdose.

### *Liability of the Government Actors*

122.     Sheriff Gahler admits that he had a direct role in requesting, reviewing, and overseeing the investigation and charges brought against Jeff, James, Ed, and Charlotte. He specifically approved the actions of the Harford County Sheriff's Office, Corporal Blubaugh, and their agents, servants, and employees.

123.     Sheriff Gahler enlisted Corporal Blubaugh to run this investigation.

124. Sheriff Gahler, Corporal Blubaugh, the Harford County Sheriff's Office proceeded to investigate Jeff, James, Ed, and Charlotte and charge them with crimes lacking any evidence or probable cause for the sole purpose of shutting down Associated and Starlite.

125. Without any evidence supporting this belief, Sheriff Gahler, Corporal Blubaugh, and the Harford County Sheriff's Office believed that Associated and Starlite were directly contributing the drug trade in Harford County; were responsible for the spike in overdoses and overdose-related deaths in Harford County; and were responsible for increase in numerous business/personal thefts and home break-ins in Harford County.

126. Sheriff Gahler, Corporal Blubaugh, the Harford County Sheriff's Office believed that shutting down Associated and Starlite by investigating and charging Jeff, James, Ed, and Charlotte without any evidence or probable cause would achieve these aims.

127. Sheriff Gahler, Corporal Blubaugh, and the Harford County Sheriff's Office were able to use the information that Associated and Starlite were required to report to State and Local authorities to catch a real thief, intervene in his drug addiction (potentially stopping an overdose), and return property to the rightful owner. Without this information, those opportunities would never had existed.

128. But Sheriff Gahler, Corporal Blubaugh, and the Harford County Sheriff's Office let the thief go (who went on to commit additional thefts), did not intervene with the drug addict (who died of an overdose), and kept the property seized from the shops.

129. These actions revealed the real aim of Sheriff Gahler, Corporal Blubaugh, the Harford County Sheriff's Office: to shut down Associated and Starlite by investigating and charging Jeff, James, Ed and Charlotte. Despite full legal compliance, cooperating with the investigation, losing both their money and property, and no evidence or probable cause linking them to any thefts or a theft scheme, Jeff, James, Ed, and Charlotte were baselessly charged and faced serious personal and professional consequences.

130. The sole purpose of these actions was to fulfill a campaign promise. A promise that has not been kept. A promise that wrecked the lives of the four Plaintiffs and failed to save the life of Patrick Humes.

131. Sheriff Gahler and Corporal Blubaugh, were acting in their individual capacity and under the color of law as employees, servants, and/or agents of the Harford County Sheriff's Office and/or the State of Maryland.

132.    Sheriff Gahler and Corporal Blubaugh were also acting in their official capacity as policymakers for the Harford County Sheriff's Office in setting the policies described above.

133.    Defendants were responsible for training and supervising (in both their job and non-job functions) the agents, servants, and employees involved in this incident.

134.    Defendants were responsible for selecting and retaining the agents, servants, and employees involved in this occurrence, and was responsible for selecting agents and employees, and servants competent and fit to perform their duties.

135.    Plaintiffs placed Defendants on notice of their claim as required by the Local Government Tort Claims Act (Maryland Code, Courts & Judicial Proceedings, §§ 5-301 *et. seq.*) by mailing the required notice via, certified, first-class U.S. mail, postage prepaid, return receipt requested to Melissa Lambert, Esq., Harford County Attorney, 220 South Main Street, Bel Air, Maryland 212014, on or before March 28, 2018. Plaintiff placed Defendants on notice of their claim as required by the Maryland Tort Claims Act (Maryland Code, State Government, §§ 12-101 *et. seq.*) by mailing the required notice via, certified, first-class U.S. mail, postage prepaid, return receipt requested to Nancy Kopp, Treasurer, 80 Calvert Street, Room 109, Annapolis, Maryland 21401 on or before March 28, 2018.

136.    Alternatively to the above Paragraph, Plaintiff placed Defendants on notice of their claim in substantial compliance with the Local Government Tort Claims Act;

137.    Alternatively to the above Paragraph, Defendants waived the notice requirement for Plaintiff under the Local Government Tort Claims Act.

138.    Plaintiff has complied with all legal and other preconditions (and/or conditions precedent) to properly file this suit including any and all notice requirements and/or exhaustion of remedies.

139.    Plaintiff has complied with all legal and other post-conditions (and/or conditions subsequent) to properly file this suit including any and all notice requirements and/or exhaustion of remedies.

140.    Alternatively, no party was prejudiced by Plaintiff's failure to comply, in whole or in part, with all legal and other preconditions (and/or conditions precedent) to properly file this suit including any and all notice requirements and/or exhaustion of remedies.

141.    Alternatively, no party was prejudiced by Plaintiff's failure to comply, in whole or in part, with all legal and other post-conditions (and/or conditions subsequent) to properly file this suit including any and all notice requirements and/or exhaustion of remedies.

142.    Alternatively, all parties waived all legal and other preconditions (and/or conditions precedent) to properly file this suit including any and all notice requirements and/or exhaustion of remedies.

143.    Alternatively, all parties waived all legal and other post-conditions (and/or conditions subsequent) to properly file this suit including any and all notice requirements and/or exhaustion of remedies.

144.    Alternatively, Plaintiff(s) have and can show good cause to properly file this suit including any and all notice requirements and/or exhaustion of remedies.

145.    Alternatively, Defendant(s) had actual or constructive notice of: (a) the claimant's injury; or (b) the defect or circumstances giving rise to the claimant's injury.

## COUNT I – BATTERY
### (All Plaintiffs v. All Defendants)

146.    Plaintiff incorporates by reference Paragraphs 1 through 145, as if set forth fully herein, and states further:

147.    Defendant(s), its/their agents, servants, and employees intended to contact Plaintiff(s) in a harmful or offensive manner.

148.    Defendant(s), its/their agents, servants, and employees Plaintiff(s) in a harmful or offensive manner.

149.    Plaintiff(s) did not consent to the contact with Defendant(s), its/their agents, servants, and employees.

150.    The conduct of Defendant(s), its/their agents, servants, and employees was deliberate and perpetrated with actual malice.

151.    As a direct and proximate result of the battery by Defendant(s), its/their agents, servants, and employees, Plaintiff(s) have/has sustained legally recognized damages, injuries, losses, and harms.

## COUNT II – FALSE ARREST
### *(All Plaintiffs v. All Defendants)*

152.    Plaintiff(s) incorporate(s) by reference Paragraphs 1 through 151, as if set forth fully herein, and states further:

153.    Defendant(s), its/their agents, servants, and employees, intentionally and unlawfully restrained and detained Plaintiff(s).

154.    Defendant(s), its/their agents, servants, and employee's intentional and unlawful restraint and detention caused Plaintiff(s) to be deprived of Plaintiff(s)'s freedom of movement.

155.    Plaintiff(s) did not consent to being restrained or detained by Defendant(s), its/their agents, servants, and employees.

156.    Defendant(s), its/their agents, servants, and employees were without legal justification to deprive Plaintiff(s) of Plaintiff(s)'s freedom of movement because Defendant(s), its/their agents, servants, and employees, arrested Plaintiff(s) without a warrant, without probable cause, with demonstrated ill will, with an improper motive, and/or with an evil purpose.

157.    As a direct and proximate result of the false arrest by Defendant(s), its/their agents, servants, and employees, Plaintiff(s) have/has sustained legally recognized damages, injuries, losses, and harms.

## COUNT III – FALSE IMPRISONMENT
### *(All Plaintiffs v. All Defendants)*

158.    Plaintiff(s) incorporate(s) by reference Paragraphs 1 through 157, as if set forth fully herein, and states further:

159.    Defendant(s), its/their agents, servants, and employees unlawfully deprived Plaintiff(s) of Plaintiff(s)'s liberty.

160.    Plaintiff(s) did not consent to the deprivation of Plaintiff(s)'s liberty and was held against Plaintiff(s)'s will for an extended period of time.

161.    Defendant(s), its/their agents, servants, and employees were without legal justification for depriving Plaintiff(s) of Plaintiff(s)'s liberty.

162.    The conduct of Defendant(s), its/their agents, servants, and employees was perpetrated with actual malice.

163.     As a direct and proximate result of the false imprisonment by Defendant(s), its/their agents, servants, and employees, Plaintiff(s) have/has sustained legally recognized damages, injuries, losses, and harms.

## COUNT IV – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### *(All Plaintiffs v. All Defendants)*

164.     Plaintiff(s) incorporate(s) by reference Paragraphs 1 through 163, as if set forth fully herein, and states further:

165.     The conduct of Defendant(s), its/their agents, servants, and employees was intentional or reckless, and in deliberate disregard of a high probability that emotional distress would result to the Plaintiff(s)

166.     The conduct of Defendant(s), its/their agents, servants, and employees was extreme and outrageous and beyond the bounds of societal decency.

167.     The conduct of Defendant(s), its/their agents, servants, and employees was malicious, willful, and intentional.

168.     As a direct and proximate result of the wrongful conduct and intentional infliction of emotional distress by Defendant(s), its/their agents, servants, and employees, Plaintiff(s) has/have sustained a severely disabling emotional response. Additionally, Plaintiff(s) have/has sustained legally recognized damages, injuries, losses, and harms.

## COUNT V – MALICIOUS PROSECUTION
### *(All Plaintiffs v. All Defendants)*

169.     Plaintiff(s) incorporate(s) by reference Paragraphs 1 through 168, as if set forth fully herein, and states further:

170.     Defendant(s), its/their agents, servants, and employees instituted and continued criminal proceedings against Plaintiff(s).

171.     Defendant(s), its/their agents, servants, and employees:

    a.    Directed or requested a prosecution based on information that Defendant(s), its/their agents, servants, and employees knew was false;

    b.    Withheld information that a reasonable person would realize might affect the decision to prosecute; and/or

      c.      Gave inaccurate or incomplete information to those who prosecute.

172.    The proceedings against Plaintiff(s), i.e. the accused in the criminal case, was/were terminated in Plaintiff(s)'s favor.

173.    Defendant(s), its/their agents, servants, and employees lacked the probable cause necessary for the proceeding against Plaintiff(s).

174.    The prosecution against Plaintiff(s) was/were instituted with malice and was not for the purpose of bringing Plaintiff(s), i.e. the alleged offender, to justice.

175.    As a direct and proximate result of the malicious prosecution by Defendant(s), its/their agents, servants, and employees, Plaintiff(s) has/have sustained and continues to suffer from severe mental anguish and loss of reputation. Additionally, Plaintiff(s) have/has sustained legally recognized damages, injuries, losses, and harms.

## COUNT VI – NEGLIGENCE
### (All Plaintiffs v. All Defendants)

176.    Plaintiff(s) incorporate(s) by reference Paragraphs 1 through 175, as if set forth fully herein, and states further:

177.    Defendant(s), its/their agents, servants, and employees had a duty to use reasonable care in:

      a.      Investigating Plaintiff(s);

      b.      Charging Plaintiff(s);

      c.      Detaining Plaintiff(s);

      d.      Arresting Plaintiff(s);

      e.      Transporting Plaintiff(s);

      f.      Training its/their agents, servants, and employees;

      g.      Supervising its/their agents, servants and employees; and

      h.      Selecting agents, servants, and employees who were competent and fit to perform their duties.

178.    Defendant(s), its/their agents, servants, and employees breached their duties and were negligent for the following reasons:

      a.      Failing to use ordinary and reasonable care in investigating Plaintiff(s), including failing to establish probable cause to charge Plaintiff(s);

b.  Failing to use ordinary and reasonable care in charging Plaintiff(s), including failing to verify that probable cause existed to charging Plaintiff(s)

c.  Failing to use ordinary and reasonable care in detaining Plaintiff(s), including failing to verify that probable cause existed to charge Plaintiff(s)

d.  Failing to use ordinary and reasonable care in arresting Plaintiff(s);

e.  Failing to use ordinary and reasonable care in transporting Plaintiff(s);

f.  Failing to use ordinary and reasonable care in detaining/imprisoning Plaintiff(s);

g.  Failing to use ordinary and reasonable care in training their agents, servants, and employees, including the requirements of probable cause and the evidence required to charge an individual with theft and/or theft scheme and the elements of that crime, and following the policies and procedures set forth by the Harford County Sheriff's Office;

h.  Failing to use ordinary and reasonable care in supervising their employees in the performance of their job functions and non-job functions, including the requirements of probable cause and the evidence required to charge an individual with theft and/or theft scheme and the elements of that crime, and following the policies and procedures set forth by the Harford County Sheriff's Office;

i.  Failing to use proper care in selecting, supervising, or retaining employees, including those that could follow the requirements of probable cause and the evidence required to charge an individual with theft and/or theft scheme and the elements of that crime, and following the policies and procedures set forth by the Harford County Sheriff's Office;

j.  Failing to select employees or agents who were competent and fit to perform their duties, including those that could follow the requirements of probable cause and the evidence required to charge an individual with theft and/or theft scheme and the elements of that

crime, and following the policies and procedures set forth by the
Harford County Sheriff's Office;

k.  Defendants, their agents, and their employees knew or should have
known by the exercise of diligence and reasonable care that their
agents and employees were capable of inflicting harm of some type;
and

l.  Failing otherwise to exercise reasonable and ordinary care under the
circumstances then and there existing.

179.   As a direct and proximate result of the negligence by Defendant(s), its/their
agents, servants, and employees, Plaintiff(s) have/has sustained legally recognized damages,
injuries, losses, and harms.

180.   All of Plaintiff(s)'s damages, injuries, losses, and harms were solely and
proximately caused by the Defendant(s), its/their agents, servants, and employees, with no
negligence on the part of Plaintiff(s) contributing thereto.

## COUNT VII – VIOLATION OF RIGHTS SECURED UNDER ARTICLE TWENTY-FOUR OF THE MARYLAND DECLARATION OF RIGHTS
### *(All Plaintiffs v. All Defendants)*

181.   Plaintiff(s) incorporate(s) by reference Paragraphs 1 through 180, as if set forth
fully herein, and states further:

182.   Defendant(s), its/their agents, servants, and employees (a)(i) acted or (ii) engaged
in activities or (b) failed to act in violation of Plaintiff(s)'s rights secured and protected under
Article 24 of the State of Maryland Declaration of Rights and the Constitution of Maryland.

183.   Article 24 states: "That no man ought to be taken or imprisoned or disseized of
his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or
deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the
land."

184.   The acts and omissions of Defendant(s), its/their agents, servants, and employees
detailed within this Complaint, include, but are not limited to the use of force against Plaintiff(s)
and the arrest of Plaintiff(s) without probable cause or a valid arrest warrant, deprived Plaintiff(s)
of Plaintiff(s)'s rights under the Maryland Declaration of Rights, including, but not limited to:

a. freedom from imprisonment without probable cause, without due process, without judgment of Plaintiff(s)'s peers, and in violation of the Law of the Land;

b. freedom from seizure of freehold, liberty, and/or privileges without probable cause, without due process, without judgment of Plaintiff(s)'s peers, and in violation of the Law of the Land;

c. freedom from outlaw without probable cause, without due process, without judgment of Plaintiff(s)'s peers, and in violation of the Law of the Land;

d. freedom from exile without probable cause, without due process, without judgment of Plaintiff(s)'s peers, and in violation of the Law of the Land;

e. freedom from the deprivation of life, liberty, or property without probable cause, without due process, without judgment of Plaintiff(s)'s peers, and in violation of the Law of the Land;

f. freedom from the destruction of his freehold, life, liberty, or property without probable cause, without due process, without judgment of Plaintiff(s)'s peers, and in violation of the Law of the Land;

g. freedom from the abuse of power by the police without probable cause, without due process, without judgment of Plaintiff(s)'s peers, and in violation of the Law of the Land;

h. freedom from the summary punishment without probable cause, without due process, without judgment of Plaintiff(s)'s peers, and in violation of the Law of the Land;

i. right to bodily integrity;

j. right to personal security;

k. right to be free from abuse by governmental actors;

l. right to a private property interest in Plaintiff(s)'s freedom;

m. right to exercise free will and domain over Plaintiff(s)'s person;

n. right to be free from unlawful and unwelcome battery by police;

    o.  right to be free from the use of excessive and unnecessary physical force on Plaintiff(s)'s person by the Defendant(s), its/their agents, servants, and employees;

    p.  right to be free from arrest and detention without probable cause, legal excuse, or justification;

    q.  ability exercise free will and dominion over their person;

    r.  ability to practice Plaintiff(s)'s chosen profession and earn a living;

185.    Plaintiff(s) has/have a protected property interest in the rights, liberties, and privileges described above and Plaintiff(s) was/were deprived of numerous protected property interests by the Defendants, their agents, and their employees when Defendant(s) investigated, charged, arrested, detained, placed in confinement, imprisoned, and prosecuted Plaintiff(s) as described above without probable cause, legal excuse, or justification and/or a valid arrest warrant.

186.    Plaintiff(s) was/were afforded less process than was due under law by the Defendant(s), its/their agents, servants, and employees in depriving them of the rights in question.

187.    The individual Defendant(s), its/their agents, servants, and employees, at all times relevant hereto, acted under color of law and in a manner that was not objectively reasonable.

188.    Plaintiff(s) further allege(s) that all of Plaintiff(s)'s injuries, losses, and damages - past, present and prospective - were caused solely by the conduct, actions, and inactions of the Defendant(s), its/their agents, servants, and employees, as set forth herein, without any negligence, want of due care, or provocation on the part of the Plaintiff(s), either directly or indirectly.

189.    Defendant(s), its/their agents, servants, and employees adopted a policy, pattern, and/or practice of action and/or inaction that facilitated the violation of Plaintiff(s) rights.

190.    Defendant(s), its/their agents, servants, and employees tacitly approved and displayed deliberate indifference towards this unconstitutional conduct reflecting what amounted to an official policy of inaction.

191.    As a direct and proximate result of these acts, by Defendant(s), its/their agents, servants, and employees, Plaintiff(s) have/has sustained legally recognized damages, injuries, losses, and harms.

## COUNT VIII – VIOLATION OF RIGHTS SECURED UNDER ARTICLE TWENTY-SIX OF THE MARYLAND DECLARATION OF RIGHTS
### (All Plaintiffs v. All Defendants)

192.    Plaintiff(s) incorporate(s) by reference Paragraphs 1 through 191, as if set forth fully herein, and states further:

193.    Defendant(s), its/their agents, servants, and employees (a)(i) acted or (ii) engaged in activities or (b) failed to act in violation of Plaintiff(s)'s rights secured and protected under Article 26 of the State of Maryland Declaration of Rights and the Constitution of Maryland.

194.    Article 26 states: "That all warrants, without oath or affirmation, to search suspected places, or to seize any person or property, are grievous and oppressive; and all general warrants to search suspected places, or to apprehend suspected persons, without naming or describing the place, or the person in special, are illegal, and ought not to be granted."

195.    The acts and omissions of Defendant(s), its/their agents, servants, and employees detailed within this Complaint, include, but are not limited, the arrest of Plaintiff(s) without probable cause or a valid arrest warrant, deprived Plaintiff(s) of Plaintiff(s)'s rights under the Maryland Declaration of Rights, including, but not limited to:

     a.  freedom from arrest, detention, or imprisonment without probable cause;

     b.  freedom from unlawful search or seizure without probable cause;

     c.  freedom from the deprivation of life, liberty, or property without probable cause;

     d.  freedom from the abuse of power by the police without probable cause;

     e.  right to bodily integrity;

     f.  right to personal security;

     g.  right to be free from abuse by governmental actors;

     h.  right to a private property interest in Plaintiff(s)'s freedom;

     i.  right to exercise free will and domain over Plaintiff(s)'s person;

     j.  right to be free from arrest and detention without probable cause, legal excuse, or justification;

     k.  ability exercise free will and dominion over their person;

l.   ability to practice Plaintiff(s)'s chosen profession and earn a living;

196.   Plaintiff(s) has/have a protected property interest in the rights, liberties, and privileges described above and Plaintiff(s) was/were deprived of numerous protected property interests by the Defendants, their agents, and their employees when Defendant(s) investigated, charged, arrested, detained, placed in confinement, imprisoned, and prosecuted Plaintiff(s) as described above without probable cause, legal excuse, or justification and/or a valid arrest warrant.

197.   Plaintiff(s) was/were afforded less process than was due under law by the Defendant(s), its/their agents, servants, and employees in depriving them of the rights in question.

198.   The individual Defendant(s), its/their agents, servants, and employees, at all times relevant hereto, acted under color of law and in a manner that was not objectively reasonable.

199.   Plaintiff(s) further allege(s) that all of Plaintiff(s)'s injuries, losses, and damages - past, present and prospective - were caused solely by the conduct, actions, and inactions of the Defendant(s), its/their agents, servants, and employees, as set forth herein, without any negligence, want of due care, or provocation on the part of the Plaintiff(s), either directly or indirectly.

200.   Defendant(s), its/their agents, servants, and employees adopted a policy, pattern, and/or practice of action and/or inaction that facilitated the violation of Plaintiff(s) rights.

201.   Defendant(s), its/their agents, servants, and employees tacitly approved and displayed deliberate indifference towards this unconstitutional conduct reflecting what amounted to an official policy of inaction.

202.   As a direct and proximate result of these acts, by Defendant(s), its/their agents, servants, and employees, Plaintiff(s) have/has sustained legally recognized damages, injuries, losses, and harms.

**COUNT IX – VIOLATION OF RIGHTS SECURED UNDER ARTICLE III, § 40 OF THE MARYLAND CONSTITUTION AND ARTICLE NINETEEN, TWENTY-FOUR, AND TWENTY-SIX OF THE MARYLAND DECLARATION OF RIGHTS**
*(All Plaintiffs v. All Defendants)*

203.    Plaintiff(s) incorporate(s) by reference Paragraphs 1 through 202, as if set forth fully herein, and states further:

204.    Defendant(s), its/their agents, servants, and employees (a)(i) acted or (ii) engaged in activities or (b) failed to act in violation of Plaintiff(s)'s rights secured and protected under Articles 19, 24, 26, and 40 of the State of Maryland Declaration of Rights and Article III, § 40, of the Constitution of Maryland.

205.    Article 19 states: "That every man, for any injury done to him in his person or property, ought to have remedy by the course of the Law of the Land, and ought to have justice and right, freely without sale, fully without any denial, and speedily without delay, according to the Law of the Land."

206.    Article 24 states: "That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land."

207.    Article 26 states: "That all warrants, without oath or affirmation, to search suspected places, or to seize any person or property, are grievous and oppressive; and all general warrants to search suspected places, or to apprehend suspected persons, without naming or describing the place, or the person in special, are illegal, and ought not to be granted."

208.    Section 40 states: "The General Assembly shall enact no Law authorizing private property to be taken for public use without just compensation, as agreed upon between the parties, or awarded by a jury, being first paid or tendered to the party entitled to such compensation."

209.    The acts and omissions of Defendant(s), its/their agents, servants, and employees detailed within this Complaint, include, but are not limited, deprived Plaintiff(s) of Plaintiff(s)'s property under the Maryland Declaration of Rights and Maryland Constitution.

210.    Plaintiff(s) has/have a protected property interest and Plaintiff(s) was/were deprived of numerous protected property interests by the Defendants, their agents, and their employees when Defendant(s) investigated, charged, arrested, detained, placed in confinement, imprisoned, and prosecuted Plaintiff(s) as described above without probable cause, legal excuse, or justification and/or a valid arrest warrant.

211.   Plaintiff(s) was/were afforded less process than was due under law by the Defendant(s), its/their agents, servants, and employees in depriving them of the rights in question.

212.   The individual Defendant(s), its/their agents, servants, and employees, at all times relevant hereto, acted under color of law and in a manner that was not objectively reasonable.

213.   Plaintiff(s) further allege(s) that all of Plaintiff(s)'s injuries, losses, and damages - past, present and prospective - were caused solely by the conduct, actions, and inactions of the Defendant(s), its/their agents, servants, and employees, as set forth herein, without any negligence, want of due care, or provocation on the part of the Plaintiff(s), either directly or indirectly.

214.   Defendant(s), its/their agents, servants, and employees adopted a policy, pattern, and/or practice of action and/or inaction that facilitated the violation of Plaintiff(s) rights.

215.   Defendant(s), its/their agents, servants, and employees tacitly approved and displayed deliberate indifference towards this unconstitutional conduct reflecting what amounted to an official policy of inaction.

216.   As a direct and proximate result of these acts, by Defendant(s), its/their agents, servants, and employees, Plaintiff(s) have/has sustained legally recognized damages, injuries, losses, and harms.

## COUNT X – VIOLATION OF RIGHTS SECURED UNDER 42 U.S.C.A. § 1983 AND THE FOURTH AND FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION
### (All Plaintiffs v. All Defendants)

217.   Plaintiff(s) incorporate(s) by reference Paragraphs 1 through 216, as if set forth fully herein, and states further:

218.   Defendant(s), its/their agents, servants, and employees (a)(i) acted or (ii) engaged in activities or (b) failed to act in violation of Plaintiff(s)'s clearly established rights secured and protected under 42 U.S.C.A. §1983 and, including, but not limited to, the Fourth and Fourteenth Amendment of the United States Constitution as well as the State of Maryland Declaration of Rights and the Constitution of the State of Maryland, the Laws of the State of Maryland, the Regulations of the State of Maryland, and the Code of Harford County, Maryland.

219.   42 U.S.C.A. §1983 states, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

220.   The Fourth Amendment of the Constitution states, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

221.   The Fourteenth Amendment of the Constitution incorporates the Fourth Amendment of the Constitution onto Defendants.

222.   Furthermore, the Fourteenth Amendment of the Constitution States: "All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

223.   This cause of action is to redress the deprivation under color of statute, ordinance, regulation, policy, custom, practice or usage of a right, privilege and immunity secured to Plaintiffs by the following non-exhaustive sources: the United States Constitution, Federal law, the State of Maryland Declaration of Rights, the Constitution of the State of Maryland, the Laws of the State of Maryland, the Regulations of the State of Maryland, and any local law or ordinance.  The deprivation was of a clearly established right.

224.   Plaintiff(s) has/have a protected property interest in the rights, liberties, and privileges described above and Plaintiff(s) was/were deprived of numerous protected property

interests by the Defendants, their agents, and their employees when Defendant(s) investigated, charged, arrested, detained, placed in confinement, imprisoned, and prosecuted Plaintiff(s) as described above without probable cause, legal excuse, or justification and/or a valid arrest warrant.

225.    Plaintiff(s) was/were afforded less process than was due under law by the Defendant(s), its/their agents, servants, and employees in depriving them of the rights in question.

226.    The individual Defendant(s), its/their agents, servants, and employees, at all times relevant hereto, acted under color of law and in a manner that was not objectively reasonable.

227.    Plaintiff(s) further allege(s) that all of Plaintiff(s)'s injuries, losses, and damages - past, present and prospective - were caused solely by the conduct, actions, and inactions of the Defendant(s), its/their agents, servants, and employees, as set forth herein, without any negligence, want of due care, or provocation on the part of the Plaintiff(s), either directly or indirectly.

228.    Defendant(s), its/their agents, servants, and employees adopted a policy, pattern, and/or practice of action and/or inaction that facilitated the violation of Plaintiff(s) rights.

229.    Defendant(s), its/their agents, servants, and employees tacitly approved and displayed deliberate indifference towards this unconstitutional conduct reflecting what amounted to an official policy of inaction.

230.    As a direct and proximate result of these acts, by Defendant(s), its/their agents, servants, and employees, Plaintiff(s) have/has sustained legally recognized damages, injuries, losses, and harms.

## COUNT XI – VIOLATION OF RIGHTS SECURED UNDER 42 U.S.C.A. § 1983 AND THE FIFTH AND FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION
### *(All Plaintiffs v. All Defendants)*

231.    Plaintiff(s) incorporate(s) by reference Paragraphs 1 through 230, as if set forth fully herein, and states further:

232.    Defendant(s), its/their agents, servants, and employees (a)(i) acted or (ii) engaged in activities or (b) failed to act in violation of Plaintiff(s)'s rights secured and protected under 42 U.S.C.A. §1983 and, including, but not limited to, the Fourth and Fourteenth Amendment of the

United States Constitution as well as the State of Maryland Declaration of Rights and the Constitution of the State of Maryland, the Laws of the State of Maryland, the Regulations of the State of Maryland, and the Code of Harford County, Maryland.

233.    42 U.S.C.A. §1983 states, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

234.    The Fifth Amendment of the Constitution states, "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, *nor be deprived of life, liberty, or property, without due process of law*; nor shall private property be taken for public use, without just compensation."

235.    The Fourteenth Amendment of the Constitution incorporates the Fourth Amendment of the Constitution onto Defendants.

236.    Furthermore, the Fourteenth Amendment of the Constitution States: "All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. *No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.*"

237.    This cause of action is to redress the deprivation under color of statute, ordinance, regulation, policy, custom, practice or usage of a right, privilege and immunity secured to Plaintiffs by the following non-exhaustive sources: the United States Constitution, Federal law,

the State of Maryland Declaration of Rights, the Constitution of the State of Maryland, the Laws of the State of Maryland, the Regulations of the State of Maryland, and any local law or ordinance. The deprivation was of a clearly established right.

238.    Plaintiff(s) has/have a protected property interest in the rights, liberties, and privileges described above and Plaintiff(s) was/were deprived of numerous protected property interests by the Defendants, their agents, and their employees when Defendant(s) investigated, charged, arrested, detained, placed in confinement, imprisoned, and prosecuted Plaintiff(s) as described above without probable cause, legal excuse, or justification and/or a valid arrest warrant.

239.    Plaintiff(s) was/were afforded less process than was due under law by the Defendant(s), its/their agents, servants, and employees in depriving them of the rights in question.

240.    The individual Defendant(s), its/their agents, servants, and employees, at all times relevant hereto, acted under color of law and in a manner that was not objectively reasonable.

241.    Plaintiff(s) further allege(s) that all of Plaintiff(s)'s injuries, losses, and damages - past, present and prospective - were caused solely by the conduct, actions, and inactions of the Defendant(s), its/their agents, servants, and employees, as set forth herein, without any negligence, want of due care, or provocation on the part of the Plaintiff(s), either directly or indirectly.

242.    Defendant(s), its/their agents, servants, and employees adopted a policy, pattern, and/or practice of action and/or inaction that facilitated the violation of Plaintiff(s) rights.

243.    Defendant(s), its/their agents, servants, and employees tacitly approved and displayed deliberate indifference towards this unconstitutional conduct reflecting what amounted to an official policy of inaction.

244.    As a direct and proximate result of these acts, by Defendant(s), its/their agents, servants, and employees, Plaintiff(s) have/has sustained legally recognized damages, injuries, losses, and harms.

COUNT XII – VIOLATION OF RIGHTS SECURED UNDER 42 U.S.C.A. § 1983
AND THE FIFTH AND FOURTEENTH AMENDMENT TO
THE UNITED STATES CONSTITUTION
*(All Plaintiffs v. All Defendants)*

245. Plaintiff(s) incorporate(s) by reference Paragraphs 1 through 244,, as if set forth fully herein, and states further:

246. Defendant(s), its/their agents, servants, and employees (a)(i) acted or (ii) engaged in activities or (b) failed to act in violation of Plaintiff(s)'s rights secured and protected under 42 U.S.C.A. §1983 and, including, but not limited to, the Fourth and Fourteenth Amendment of the United States Constitution as well as the State of Maryland Declaration of Rights and the Constitution of the State of Maryland, the Laws of the State of Maryland, the Regulations of the State of Maryland, and the Code of Harford County, Maryland.

247. 42 U.S.C.A. §1983 states, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

248. The Fourth Amendment of the Constitution states, "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; ***nor shall private property be taken for public use, without just compensation***."

249. The Fourteenth Amendment of the Constitution incorporates the Fourth Amendment of the Constitution onto Defendants.

250. Furthermore, the Fourteenth Amendment of the Constitution States: "All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. ***No State shall make or enforce any law***

*which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."*

251.   This cause of action is to redress the deprivation under color of statute, ordinance, regulation, policy, custom, practice or usage of a right, privilege and immunity secured to Plaintiffs by the following non-exhaustive sources: the United States Constitution, Federal law, the State of Maryland Declaration of Rights, the Constitution of the State of Maryland, the Laws of the State of Maryland, the Regulations of the State of Maryland, and any local law or ordinance. The deprivation was of a clearly established right.

252.   Plaintiff(s) has/have a protected property interest in the rights, liberties, and privileges described above and Plaintiff(s) was/were deprived of numerous protected property interests by the Defendants, their agents, and their employees when Defendant(s) investigated, charged, arrested, detained, placed in confinement, imprisoned, and prosecuted Plaintiff(s) as described above without probable cause, legal excuse, or justification and/or a valid arrest warrant.

253.   Plaintiff(s) was/were afforded less process than was due under law by the Defendant(s), its/their agents, servants, and employees in depriving them of the rights in question.

254.   The individual Defendant(s), its/their agents, servants, and employees, at all times relevant hereto, acted under color of law and in a manner that was not objectively reasonable.

255.   Plaintiff(s) further allege(s) that all of Plaintiff(s)'s injuries, losses, and damages - past, present and prospective - were caused solely by the conduct, actions, and inactions of the Defendant(s), its/their agents, servants, and employees, as set forth herein, without any negligence, want of due care, or provocation on the part of the Plaintiff(s), either directly or indirectly.

256.   Defendant(s), its/their agents, servants, and employees adopted a policy, pattern, and/or practice of action and/or inaction that facilitated the violation of Plaintiff(s) rights.

257.   Defendant(s), its/their agents, servants, and employees tacitly approved and displayed deliberate indifference towards this unconstitutional conduct reflecting what amounted to an official policy of inaction.

258.    As a direct and proximate result of these acts, by Defendant(s), its/their agents, servants, and employees, Plaintiff(s) have/has sustained legally recognized damages, injuries, losses, and harms.

COUNT XIII – RESPONDEAT SUPERIOR
*(All Plaintiffs v. All Defendants)*

259.    Plaintiff(s) incorporate(s) by reference Paragraphs 1 through 258, as if set forth fully herein, and states further:

260.    Defendant(s), its/their agents, servants, and employees detaining, arresting, and transporting Plaintiff(s) was/were employed by, the agents of, or the servants of Defendant(s), its/their agents, servants, and employees.

261.    Defendant(s), its/their agents, servants, and employees committed the acts and omissions complained of while working on duty for Defendant(s), its/their agents, servants, and employees and while detaining, arresting, and transporting Plaintiff(s), which resulted in personal injury to Plaintiff(s).

262.    Defendant(s), its/their agents, servants, and employees committed these acts or omissions within the scope of their employment, agency relationship, or servitude relationship with Defendant(s), its/their agents, servants, and employees for which they were acting in furtherance of the interests of Defendant(s), its/their agents, servants, and employees.

263.    As a direct and proximate result of these acts, by Defendant(s), its/their agents, servants, and employees, Plaintiff(s) have/has sustained legally recognized damages, injuries, losses, and harms.

WHEREFORE, Plaintiffs Jeffrey Andrew Ledergerber, James Franklin Baker, Edward Thomas Wolf, and Charlotte Freda Wolf, individually and separately, demand(s) judgment against Defendants Corporal Justin L. Blubaugh, Sheriff Jeffrey R. Gaylor, Harford County Sheriff's Office, Harford County, Maryland, and the State of Maryland, jointly and severally, in a sum in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in compensatory damages, in a sum in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in punitive damages, plus interest, costs, reasonable attorney's fees, and all other relief deemed just and necessary under the circumstances.

Respectfully Submitted,

**LEDYARD LAW LLC**

By: /s/ David C.M. Ledyard
    David C.M. Ledyard
    CPF No.: 0912160165
    1 North Charles Street, Suite 1215
    Baltimore, Maryland 21201
    Phone:  (410) 807-8077
    Fax:    (410) 807-8076
    david@ledyardlaw.com

    *Counsel for Plaintiff(s)*


## DEMAND FOR JURY TRIAL

Plaintiff requests a trial by jury on all issues raised herein.

/s/ David C.M. Ledyard
David C.M. Ledyard