## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**JEFFREY LEDERGERBER, *et al.*,**         *

     **Plaintiffs,**                  *

     **v.**                          *

**JUSTIN BLUBAUGH, *et al.*,**            *          **CIVIL NO. JKB-20-1208**

     **Defendants.**               *

    *     *     *     *     *     *     *     *     *     *     *     *

## <u>MEMORANDUM</u>

This case arises out of the arrests of the owners and employees of two Harford County pawn shops. In 2015, the Plaintiff pawnbrokers purchased goods from non-party Patrick Humes— some of which turned out to be stolen. Plaintiffs duly reported these purchases to the State of Maryland and the Harford County Sheriff pursuant to applicable state and local laws. Humes was later arrested and confessed to Corporal Justin Blubaugh that he had sold stolen goods to Plaintiffs. Corporal Blubaugh then led an investigation that culminated in Plaintiffs being indicted on theft charges by a Maryland grand jury. Plaintiffs were arrested, the allegedly stolen goods were confiscated, and the charges against Plaintiffs were publicized. Subsequently, two of the Plaintiffs' criminal cases ended in *nolle prosequi* dispositions, and the other two Plaintiffs were acquitted at trial. Plaintiffs then brought this lawsuit seeking compensation for harms associated with alleged misconduct on the part of Sheriff Jeffrey Gahler, Corporal Blubaugh, and their subordinates.

Now pending before the Court are motions to dismiss as to all Defendants. (ECF Nos. 12, 13, 20, 27, 28, 29.) Also pending are motions filed by the State of Maryland and Harford County in relation to Maryland's request for declaratory judgment that Harford County will pay any costs

and damages associated with this action. (ECF Nos. 40, 41.) The various motions are fully briefed, and no hearing is required. *See* Local Rule 105.6 (D. Md. 2018). For the reasons set forth below, the Court will: (1) grant Harford County's motion to dismiss (ECF No. 27); (2) grant in part and deny in part Maryland's motion to dismiss (ECF No. 29); (3) grant in part and deny in part Sheriff Gahler, Corporal Blubaugh, and the Harford County Sheriff's Office's motion to dismiss (ECF No. 28); and (4) authorize limited discovery regarding the critical question in this case—whether Corporal Blubaugh induced the prosecutor and grand jury to wrongfully indict Plaintiffs by making material misrepresentations regarding the evidence against Plaintiffs. The Court will also deny Maryland's motion for summary judgment on its Crossclaim (ECF No. 40) and grant Harford County's motion to dismiss the Crossclaim (ECF No. 41).

## I.    Background[1]

During the period at issue in this dispute, Plaintiff Jeffrey Ledergerber was the owner and operator of Starlite Coin and Pawn LLC ("Starlite"). (Am. Compl. ¶¶ 1, 16, ECF No. 23.) Plaintiff Edward Wolf was the owner and operator of Associated Pawn Brokers, Inc. ("Associated"). (*Id.* ¶¶ 3, 17.) Plaintiffs James Baker and Charlotte Wolf worked at Associated. (*Id.* ¶¶ 2–4, 18.)

Defendant Jeffrey Gahler is the Sheriff of Harford County. (*Id.* ¶ 6.) Defendant Corporal Justin Blubaugh was the Deputy Sheriff in charge of the Harford County "Pawn Unit" at the time of the events at issue. (*Id.* ¶¶ 5, 50.) According to the Amended Complaint, "Defendant Harford County Sheriff's Office, is and was, at all times relevant, a law enforcement agency." (*Id.* ¶ 7.) Defendant Harford County, Maryland ("Harford County") is a Charter County of Defendant the State of Maryland. (*Id.* ¶¶ 8–9.)

---

[1] The facts in this section are taken from the Amended Complaint and construed in the light most favorable to Plaintiffs. *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

The origins of the dispute between the parties lie with the actions of non-party Patrick Humes. Prior to his death as a result of a heroin overdose, Humes made a practice of selling stolen goods to pawnshops. (*Id.* ¶ 45.) In 2015, he repeatedly sold stolen Home Depot merchandise to Plaintiffs. (*Id.* ¶¶ 56–57.) Humes did not notify Plaintiffs that the goods were stolen, and on the one occasion when one of the Plaintiffs (Charlotte Wolf) asked where Humes obtained the goods, he claimed "that he was a wholesaler looking to offload some unwanted items." (*Id.* ¶ 64.) Plaintiffs typically offered Humes approximately half of what they believed to be market value for the goods they purchased, and he always accepted their offers without negotiation. (*Id.* ¶ 62.) Each time they purchased merchandise from Humes, Plaintiffs properly documented and reported the transactions pursuant to the requirements of the state and local laws governing Harford County pawnbrokers, Md. Code Ann., Bus. Reg. § 12-401 and Harford County Code § 188. (*Id.* ¶¶ 37, 56.) As a result, the transactions were recorded in the Maryland Regional Automated Pawn Information Database ("RAPID"). (*Id.* ¶ 29.)

In June 2015, Humes was caught attempting to steal from a Home Depot store in Harford County. (*Id.* ¶ 46.) Using RAPID, Corporal Blubaugh discovered that Humes had made several sales to Plaintiffs, and that some of the merchandise he sold had been reported missing from businesses including Home Depot. (*Id.* ¶¶ 56–58.) Upon interrogation, Humes confessed to selling stolen goods to Plaintiffs, but he denied that Plaintiffs knew he was selling stolen goods or ever directed him to steal. (*Id.* ¶¶ 60–66.) He also noted that Plaintiffs always complied with the state and local reporting requirements and that they never offered to deal "under the table." (*Id.*)

Corporal Blubaugh subsequently released Humes and began an investigation into Plaintiffs. (*Id.* ¶¶ 67–75.) Plaintiffs allege that he did so at the direction of Sheriff Gahler . . . not because either law enforcement officer actually believed Plaintiffs violated the law, but out of a

desire to make news with high profile arrests of alleged pawn shop fraudsters, which Sheriff Gahler could cast as a success in combating the heroin epidemic. (*Id.* ¶¶ 122–30.) Corporal Blubaugh's investigation culminated with him testifying before a grand jury in an effort to secure indictments against each Plaintiff. (*Id.* ¶ 130.) According to the Amended Complaint, Corporal Blubaugh omitted from his report to the prosecutor and from his testimony to the grand jury relevant exculpatory facts including: (1) that Plaintiffs had complied with the state reporting requirements, and (2) that Humes had vigorously denied that Plaintiffs had any awareness the goods they purchased from him were stolen. (*Id.*) Plaintiffs allege that but for Corporal Blubaugh's omissions, the grand jury would not have indicted. They also allege that Corporal Blubaugh intentionally misled the grand jury because he knew that honesty testimony would not result in indictments. (*Id.*)

On March 29, 2017, the grand jury returned indictments against each Plaintiff for theft-scheme and theft of between $1,000 and $10,000, in violation of Md. Code Ann. Crim. Law § 7-104. (*Id.* ¶¶ 75–81, 130.)[2] This statute criminalizes the knowing possession of stolen personal property and provides that the necessary *mens rea* "may be inferred if . . . being in the business of buying or selling property of the sort possessed, the person acquired it for a consideration that the person knew was far below a reasonable value." § 7-104(c)(2)(iii). Plaintiffs allege that but for Corporal Blubaugh's omissions, the grand jury would not have returned the indictments.

Subsequently, deputies in Corporal Blubaugh's unit arrested each Plaintiff. (Am. Compl ¶¶ 75–81.) Pursuant to Maryland law, the allegedly stolen goods were taken from Plaintiffs

---

[2] Though the Amended Complaint refers to Corporal Blubaugh "charging" the Plaintiffs, it also notes that a grand jury indicted Plaintiffs. (Am. Compl. ¶¶ 75, 130.) The imprecision of the pleadings aside, after reviewing Plaintiffs' briefing, the Court interprets Plaintiffs' pleadings to allege that the grand jury issued indictments as to each Plaintiff prior to any arrests. (*See* Opp'n to Sheriff's Mot. at 2–5, ECF No. 32.) To the extent there is any question about this issue, the Court takes judicial notice of the indictments submitted as exhibits to the Sheriff Defendants' motions. (Sheriff's First Mot. Dismiss Ex. 1, ECF Nos. 28-2.) *See United States v. Kane*, 434 F. App'x 175 (4th Cir. 2011).

without compensation and returned to Home Depot. (*Id.* ¶¶ 58, 92, 118.)  Sheriff Gahler and Corporal Blubaugh then issued a press release detailing the allegations against Plaintiffs and linking Plaintiffs' alleged misconduct to the opioid epidemic. (*Id.* ¶¶ 98–102.)  Plaintiffs were subjected to mistreatment as a result of the negative publicity. (*Id.* ¶¶ 104–118.)  Baker's wife lost her job, and Baker left the pawnbroker business for less lucrative work. (*Id.*)  Baker also had an unpleasant run–in with the police following an erroneous report that he had fled custody. (*Id.*)  Ledergerber and his wife divorced, as did Edward Wolf and his wife. (*Id.*)

In March 2018, *nolle prosequi* dispositions were entered as to Edward Wolf and Baker. (*Id.* ¶¶ 79–80.)  In separate trials, Charlotte Wolf and Ledergerber were acquitted on motions made at the end of the State's evidence. (*Id.* ¶¶ 78, 81.)  Though the pleadings contain only limited discussion of events at trial, the pleadings indicate that the prosecution was unable to prove the *mens rea* necessary to establish liability under § 7-104(c).

Plaintiffs filed suit in the Circuit Court for Harford County, Maryland on March 26, 2020, alleging 13 Counts against all Defendants: (1) Battery; (2) False Arrest; (3) False Imprisonment; (4) Intentional Infliction of Emotional Distress; (5) Malicious Prosecution; (6) Negligence; (7–8) Violation of Articles 24 and 26 of the Maryland Declaration of Rights; (9) Violation of Article III, § 40 of the Maryland Constitution and Article 19 of the Maryland Declaration of Rights; (10–12) 42 U.S.C. § 1983 violations of Plaintiffs' rights under the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution; and (13) *Respondeat Superior*. (ECF No. 10.)  At the heart of the each of these 13 Counts is the allegation that Plaintiffs were arrested without probable cause.[3]

---

[3] Though the Amended Complaint also gestures towards the theory that the seizure of some of the allegedly stolen goods was unlawful, as discussed *infra*, this theory is not sufficiently articulated to state a claim for relief.

Defendants removed the action on May 12, 2020. (ECF No. 1.) Harford County and Maryland filed separate motions to dismiss (ECF Nos. 12, 20), and Sheriff Gahler, Corporal Blubaugh, and the Harford County Sheriff's Office (collectively, the "Sheriff Defendants") also filed their own motion to dismiss. (ECF No. 13.) Plaintiffs then filed an Amended Complaint (ECF No. 23), mooting those motions. Maryland subsequently filed a second motion to dismiss (ECF No. 29), as did Harford County (ECF No. 27) and the Sheriff Defendants (ECF No. 28).

After the filing of these motions, Maryland filed a Crossclaim against Harford County seeking declaratory judgment that Harford County is responsible for the defense of this action and payment of any damage found. (ECF No. 39.) Maryland then moved for summary judgment on the matter (ECF No. 40), and Harford County cross-moved for dismissal of the Crossclaim (ECF No. 41). The matter does not touch on the merit of Plaintiffs' claims against the various Defendants, and instead seeks a ruling on the state law issue of what political entity is responsible for paying any damages and litigation costs associated with this action.

## II.    *Motion to Dismiss Legal Standard*

"In considering a motion to dismiss" pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff." *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A pleading that

6

offers 'labels and conclusions' or . . . 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557).

### III.   *Motion to Dismiss Analysis*

Though the factual questions at the core of this dispute are relatively simple, Plaintiffs' pleadings implicate complicated legal questions regarding what entities and individuals can be subject to liability under which legal theories.  The Court will address the claims against each Defendant in turn.

#### A.   *Claims Against the Harford County Sheriff's Office*

All of Plaintiffs' claims against the Harford County Sheriff's Office will be dismissed. Though Sheriff Gahler and his deputies are subject to lawsuits, "the Harford County Sheriff's Office is not a separate legal entity capable of being sued." *Hines v. French*, 852 A.2d 1047, 1071 (Md. Ct. Spec. App. 2004).

#### B.   *Claims Against Harford County*

The claims against Harford County will also be dismissed.  The claims against Harford County brought under Maryland law are subject to dismissal on two independent grounds.  First, Harford County is immune to direct suit for Maryland torts because Maryland's Local Government Tort Claims Act ("LGTCA") "does not waive governmental immunity or otherwise authorize any actions directly against local governments." *See Livesay v. Baltimore Cnty.*, 862 A.2d 33, 44 (Md. 2004) (quoting *Williams v. Maynard*, 754 A.2d 379, 388 (Md. 2000)).  Second, under *Rucker v. Harford Cnty.*, 558 A.2d 399 (Md. 1989), the Sheriff and his deputies are considered state officials rather than county officials under state law.  As such, it is Maryland, not Harford County, which is answerable for their actions. *See id.* at 402 ("[T]he Sheriff and Deputy Sheriffs of Harford County are officials and/or employees of the State of Maryland rather than of Harford County.").

The claims against Harford County brought pursuant to 42 U.S.C. § 1983 will also be dismissed because the events at issue involved the Sheriff's exercise of his authority as a law enforcement official, not a Harford County policy maker. In general, federal courts analyzing federal law claims against Maryland sheriffs follow *Rucker* in holding that the sheriff acts as a state official when exercising law enforcement functions. *See Rossignol v. Voorhaar*, 321 F.Supp.2d 642, 650–51 (D. Md. 2004) (county not liable for sheriff's actions when sheriff is exercising law enforcement function). Only in unusual circumstances, such as when a sheriff acts as a local policy maker, can a county be subject to liability for his actions under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). *Compare Bishop v. Lewis*, Civ. No. WMN-10-3640, 2011 WL 1704755, at *3 (D. Md. May 4, 2011) ("It is well established that a county sheriff in Maryland is a state official, at least when engaged in law enforcement duties.") *with Santos v. Frederick Cnty. Bd. of Comm'rs*, 346 F. Supp. 3d 785 (D. Md. 2018) (imposing § 1983 municipal liability for sheriff's actions as a final immigration policy maker).

The alleged acts of the Sheriff and his deputies at issue in this case involve the enforcement of Maryland criminal law. Corporal Blubaugh sought indictments from a Maryland grand jury, and his deputies acted on arrest warrants issued by that grand jury. Sheriff Gahler did not take any action that could be construed as a policy decision made on behalf of the County. Therefore, it is the State, not Harford County, which is answerable for the Sheriff Defendants' actions. As such, the § 1983 claim against Harford County will be dismissed. *See Proctor v. Wells Fargo Bank, N.A.*, 289 F. Supp. 3d 676, 686–90 (D. Md. 2018) (sheriff and deputies acted as state officials in executing eviction notice issued under state law); *Glover v. Carroll Cnty. Sheriff's Dep't*, Civ. No. JKB-13-3192, 2014 WL 1330943, at *5 (D. Md. Apr. 2, 2014) (compiling cases).

8

The Court notes that though Harford County will be dismissed as a party Defendant, this decision does not in any way affect Harford County's obligations in relation to defense and coverage under Md. Code Ann., State Fin. & Proc. § 9-108. At the same time, the existence of such obligations does not render Harford County subject to direct liability under the theories alleged. *See Barbre v. Pope*, 935 A.2d 699, 713 n.18 (Md. 2007) ("provisions regarding the payment of judgments" for the acts of Sheriffs by the counties "do not authorize tort actions against counties") (quoting *Boyer v. State*, 594 A.2d 121, 128 n.10 (Md. 1991)).

### C.  Federal Claims Against State of Maryland

The § 1983 claims against the State and the Sheriff Defendants in their official capacities will also be dismissed. Under long-established Supreme Court precedent, states and state officials acting in their official capacities are not "persons" subject to liability under 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989). As such, the § 1983 claims against the State will be dismissed. Further, since Sheriff Gahler, Corporal Blubaugh, and their subordinates were exercising their authority as state officials in connection with the events at issue, the "official capacity" § 1983 claims against them will also be dismissed. *See Proctor*, 289 F. Supp. 3d at 690 (dismissing official capacity claims); *Glover*, 2014 WL 1330943, at *5 (same).

### D.  Claims Against Corporal Blubaugh

The majority of the remaining claims against Corporal Blubaugh will also be dismissed. However, those claims that specifically challenge Corporal Blubaugh's conduct in providing testimony that led the grand jury to issue warrants for Plaintiffs' arrests—the "individual capacity" § 1983 claim alleging Fourth Amendment violations, the Maryland Declaration of Rights Articles 24 and 26 claims, the malicious prosecution claim, and the negligence claim—will be allowed to proceed. Limited discovery is necessary before these claims can be resolved.

### 1. *Fourth Amendment Claim*

Starting with the § 1983 claim alleging violations of Plaintiffs' Fourth Amendment rights, Plaintiffs allege that Corporal Blubaugh violated their right to be free from unreasonable seizure under the Fourth Amendment as incorporated through the Fourteenth Amendment by securing their arrests through dishonest testimony. The Court interprets this claim as one "founded on a Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution." *Massey v. Ojaniit*, 759 F.3d 343, 356 (4th Cir. 2014) (quoting *Lambert v. Williams*, 223 F.3d 257, 262 (4th Cir. 2000)). To state such a claim, a plaintiff must plausibly allege: "that [1] the defendant[s] have seized plaintiff pursuant to legal process that was not supported by probable cause and [2] that the criminal proceedings have terminated in plaintiff's favor." *Durham v. Horner*, 690 F.3d 183, 188 (4th Cir. 2012) (internal quotation marks and citations omitted). Additionally, because Corporal Blubaugh benefits from qualified immunity in relation to his discretionary actions as a law enforcement officer, the claim can proceed only if it would have been "clear to a reasonable officer" in Corporal Blubaugh's position "that his or her [alleged] conduct was unlawful in the particular situation that he or she confronted." *Livingston v. Kehagias*, 803 F. App'x 673, 679 (4th Cir. 2020) (citations omitted).

By claiming that Corporal Blubaugh had them seized without probable cause and that they were not convicted of any criminal conduct, Plaintiffs have alleged the basic elements of an "individual capacity" § 1983 Fourth Amendment claim. However, Defendants argue that Plaintiffs' allegation that Corporal Blubaugh and his subordinates lacked probable cause is not plausibly stated because a grand jury issued warrants for Plaintiffs' arrests. The grand jury's involvement undoubtedly undermines Plaintiffs' claims, as the Fourth Circuit has repeatedly explained that "an indictment, 'fair upon its face,' returned by a 'properly constituted grand jury,'

10

conclusively determines the existence of probable cause." *Durham*, 690 F.3d at 189 (quoting *Gerstein v. Pugh*, 420 U.S. 103, 117 n.19 (1975)).

Nonetheless, "notwithstanding the conclusive effect" of an indictment, "a grand jury's decision to indict[] will not shield a police officer who deliberately supplied misleading information that influenced the decision." *Id.* at 189 (internal quotation marks and citations omitted). "Thus, while 'intervening acts of other participants in the criminal justice system,' such as an exercise of prosecutorial discretion or the return of an indictment, generally 'insulate a police officer from liability,'[] officers may be liable to a wrongfully indicted defendant when they have, e.g., lied to or misled the prosecutor" or grand jury. *Massey*, 759 F.3d at 357 (quoting *Evans v. Chalmers*, 703 F.3d 636, 647–48 (4th Cir. 2012)). This is true even if the testifying officer was not personally involved in the plaintiff's arrest. *See Miller v. Prince George's Cnty.*, 475 F.3d 621, 630 (4th Cir. 2007) (fact that defendant "was not the arresting officer [did not] eliminate his responsibility for the natural consequences of his use of intentionally or recklessly false material misstatements and omissions to obtain [an] arrest warrant.").

For a Fourth Amendment violation to be found, "the false statements or omissions must be 'material,' that is, 'necessary to the finding of probable cause.'" *Id.* at 628 (alterations omitted) (quoting *Franks v. Delaware*, 438 U.S. 154, 156 (1978)). Additionally, the misstatements or omissions must be made "deliberately or with a reckless disregard for the truth." *Id.* at 627 (internal quotation marks and citations omitted). A plaintiff can prove this element by showing that "when viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." *Id.* at 627 (internal quotation marks and citations omitted); *see also Murphy v. Anne Arundel Cnty.*, Civ. No. MJG-12-1533, 2012 WL 5463021, at *5 (D. Md. Nov. 7, 2012) ("Although a law

11

enforcement officer need not include all exculpatory information in a warrant affidavit, he or she cannot purposefully exclude information in order to mislead the party responsible for evaluating whether the warrant affidavit establishes probable cause").

Under this law—which was clearly established at the time of the events at issue—the question facing the Court is whether Plaintiffs have plausibly alleged that Corporal Blubaugh made omissions and misstatements that caused the prosecutor to pursue groundless charges and the grand jury to indict wrongfully.   The question is close.   Though Plaintiffs' briefing contains much protestation that no evidence supported their indictments, Plaintiffs freely admit the *actus reus* component of the crime with which they were charged by acknowledging that they purchased and possessed stolen goods.   (*See, e.g.*, Am. Compl. ¶¶ 55–69.)   Defendants make a strong case that the evidence showing Plaintiffs repeatedly purchased brand-new goods at half price from Humes was sufficient to establish probable cause *as a matter of law*, any exculpating facts notwithstanding.

However, the Court is unprepared to make such a determination, as a matter of law, under the lenient Rule 12(b)(6) standard.   Accepting the allegations in the Amended Complaint, Plaintiffs have plausibly alleged that a series of intentional misrepresentations on Corporal Blubaugh's part led the prosecution to pursue charges and the grand jury to indict when they otherwise would not have found probable cause.   (*See, e.g.*, Am. Compl. ¶ 130.)   Since the unlawfulness of misleading the prosecution and grand jury in this manner is long established, qualified immunity presents no barrier.   Perhaps the evidence produced in discovery will not support Plaintiffs' assertions. However, Plaintiffs are entitled to that discovery.

### 2. *Articles 24 and 26 Claims*

Dismissal will also be denied as to Plaintiffs' claims against Corporal Blubaugh under Articles 24 and 26 of the Maryland Declaration of Rights. "[S]tate constitutional claims under Articles 24 and 26 of the Maryland Declaration of Rights are construed *in pari materia* to[] Fourth Amendment claim[s]." *Miller*, 475 F.3d at 631 n.3. Therefore, the Court's finding that the allegations in the Amended Complaint state a plausible Fourth Amendment claim necessitates a finding that the Amended Complaint states claims under Articles 24 and 26. *See id.*; *see also Humbert v. Mayor & City Council of Baltimore City*, 866 F.3d 546, 561 n.7 (4th Cir. 2017), *as amended* (Aug. 22, 2017). The novel question posed by these State constitutional claims is whether the Maryland Tort Claims Act (MTCA), Md. Code State Gov't §§ 12–101 *et seq.*, protects Corporal Blubaugh from state law liability. The Court finds that it does not.

In most circumstances, the MTCA makes law enforcement officers immune from state law liability for their discretionary acts and instead permits plaintiffs to seek recovery from Maryland. However, the MTCA reverses this liability regime when the alleged misconduct was committed with "malice or gross negligence." In such circumstances, the law enforcement officers are subject to personal liability, and the State is immune. *See Lee v. Cline*, 863 A.2d 297, 307 (Md. 2004).

Therefore, Plaintiffs' state law claims against Corporal Blubaugh may proceed only if Plaintiffs have plausibly alleged that Corporal Blubaugh acted with malice or gross negligence. In the MTCA context, "malice" means that an action is undertaken "without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff." *Thacker v. City of Hyattsville*, 762 A.2d 172, 189 (Md. Ct. Spec. App. 2000). Malice may "be inferred from an arrest that was so lacking in probable cause and legal justification as to render [the defendant officer's] stated belief in its existence unreasonable

13

and lacking in credibility." *McDaniel v. Arnold*, 898 F.Supp.2d 809, 850 (D. Md. 2012) (quoting *Thacker*, 762 A.2d 193–94). "Gross negligence" typically means that an officer's actions are "so heedless and incautious as necessarily to be deemed unlawful and wanton, manifesting such a gross departure from what would be the conduct of an ordinarily careful and prudent person under the same circumstances so as to furnish evidence of indifference to consequences." *Henry v. Purnell*, 652 F.3d 524, 536 (4th Cir. 2011) (quoting *State v. Albrecht*, 649 A.2d 336, 348 (Md. 1994)). "Whether an officer's actions are grossly negligent, and therefore unprotected by statutory immunity, is generally a question for the jury." *Id.* (citations omitted).

Under this standard, Plaintiffs have plausibly alleged gross negligence and malice. If Corporal Blubaugh truly withheld evidence knowing that "the arrest, detention, and prosecution of Plaintiffs depended on withholding [the evidence] from both the grand jury and the prosecutor" (Am. Compl. ¶ 130), a reasonable jury could find that conduct represented a "gross departure from what would be the conduct of an ordinarily careful and prudent person." *Albrecht*, 649 A.2d at 348. Likewise, with malice—accepting Plaintiffs' allegations regarding Corporal Blubaugh's motive, the Court is unprepared to find a lack of malice as a matter of law.

### 3. *Malicious Prosecution Claim*

Dismissal will also be denied as to the malicious prosecution claim against Corporal Blubaugh. The elements of a Maryland common law claim for malicious prosecution are: "(1) a prosecution initiated against the plaintiff without probable cause, (2) with malice, or with a motive other than to bring the offender to justice; and (3) termination of the prosecution in favor of the plaintiff." *Davis v. DiPino*, 708 A.2d 357, 384 (Md. Ct. Spec. App. 1998), *aff'd in part, vacated in part*, 729 A.2d 354 (Md. 1999). The Court has already addressed each of these elements in relation to the claims discussed above. The allegations in the Amended Complaint plausibly allege

a lack of probable cause, improper motive, and termination of the prosecution in each Plaintiff's favor. This claim will therefore survive dismissal.

### 4. Negligence Claim

Finally, Plaintiffs have also plausibly alleged negligence against Corporal Blubaugh. To state a claim for negligence under Maryland law, a Plaintiff must allege: "(a) a duty owed by the defendant to the plaintiff, (b) a breach of that duty and (c) injury proximately resulting from that breach." *Horridge v. St. Mary's Cnty. Dep't of Soc. Servs.*, 854 A.2d 1232, 1238 (Md. 2004) (emphasis and citations omitted). Courts have regularly found law enforcement officers owe an enforceable duty of care to individuals arrested as a result of their testimony. *See, e.g., Humbert v. O'Malley*, Civ. No. WDQ-11-0440, 2014 WL 1266673, at *17–18 (D. Md. Mar. 25, 2014). The Court has already held that Plaintiffs plausibly alleged gross negligence in relation to the Articles 24 and 26 claims. As such, the negligence claim will also proceed.

### 5. "Due Process" Claim

The rest of Plaintiffs' claims against Corporal Blubaugh will be dismissed. First, Plaintiffs have failed to allege facts supporting their § 1983 claims for general "due process" violations in relation to their seizures. Plaintiffs argue that the same allegations that set forth a claim for a violation of their Fourth Amendment right to be free from unlawful seizure also state a claim for a violation of their right to due process as enshrined in the Fifth and Fourteenth Amendments.[4] However, the Fourth Circuit has rejected this argument, holding that "the Due Process Clause is

---

[4] The Court notes that as a technical matter, the Fourteenth Amendment's Due Process Clause is the source of all the federal constitutional rights Plaintiffs invoke. *See United States v. Hornsby*, 666 F.3d 296, 310 (4th Cir. 2012) (explaining "the Fourteenth Amendment's Due Process Clause is a limitation on state conduct," while the "due process protections against the federal government are found in the Fifth Amendment"); *Mapp v. Ohio*, 367 U.S. 643, 655 (1961) (holding the Fourth Amendment's right against unreasonable searches and seizures is enforceable against the States through the Due Process Clause of the Fourteenth Amendment). However, Plaintiffs' pleadings clearly include analytically separate claims relating to: (1) the protection from unreasonable seizure enshrined in the Fourth Amendment; and (2) the more general "due process" protections associated with the Fifth Amendment. The Court analyzes the claims as such.

not the proper lens through which to evaluate law enforcement's pretrial missteps." *Safar v. Tingle*, 859 F.3d 241, 245 (4th Cir. 2017) ("[A] police officer who withholds exculpatory information does not violate the Fourteenth Amendment unless the officer's failure to disclose deprived the plaintiff of the right to a fair trial.") (internal quotation marks and citations omitted); *see also Evans*, 703 F.3d at 647 n.2 ("[W]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.") (internal quotation marks and citations omitted).  Since Plaintiffs have not plausibly alleged that Defendants' actions impacted their rights to fair trials, and instead seek compensation for the same conduct as addressed in their Fourth Amendment claim, the non-Fourth Amendment § 1983 claims will be dismissed.

### 6. *False Arrest, False Imprisonment, and Battery*

Plaintiffs' false arrest, false imprisonment, and battery claims will likewise be dismissed. False arrest and false imprisonment claims cannot succeed "where the sole basis for the tort action is an arrest made by a police officer pursuant to a warrant which appears on its face to be valid." *Montgomery Ward v. Wilson*, 664 A.2d 916, 925 (Md. 1995). As the Fourth Circuit explained in *Miller*, "under Maryland law a false arrest claim will not lie against one wrongfully obtaining a warrant when that individual is not the detaining officer and the detaining officer arrests pursuant to a facially valid warrant." 475 F.3d at 631 n.5. "Rather, to the extent that the instigator acts maliciously to secure the warrant for the plaintiff's arrest, the plaintiff's cause of action against the instigator is malicious prosecution." *Montgomery*, 664 A.2d at 927. Here, as in *Miller*, the officers who arrested Plaintiffs were operating pursuant to warrants issued after indictment by a grand jury. As such, the false arrest and false imprisonment claims will not lie. The same is true

16

of Plaintiffs' battery claims, which the facially valid warrants also preclude. *See Humbert v. O'Malley*, 2014 WL 1266673, at *15 n.52.

### 7. *Intentional Infliction of Emotional Distress ("IIED")*

Plaintiffs' IIED claim against Corporal Blubaugh will also be dismissed. Under Maryland law, an IIED claimant must establish four elements: (1) the conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) the conduct must be causally related to the emotional distress; and (4) the emotional distress must be severe. *See Harris v. Jones*, 380 A.2d 611, 614 (Md. 1977). Each of these elements "must be pled and proved with specificity." *Foor v. Juv. Servs. Admin.*, 552 A.2d 947, 959 (Md. Ct. Spec. App. 1989).

Plaintiffs' allegations fail to establish the fourth element. To allege this element, a plaintiff must plausibly allege that he or she suffered distress "so severe that no reasonable [person] could be expected to endure it." *Harris*, 380 A.2d at 616. Though Plaintiffs allege that their arrests and prosecutions caused them to suffer the sort of stress and difficulty individuals charged with crimes often experience, they do not "allege any facts suggesting [any Plaintiff] suffered a severely disabling emotional response to [Corporal Blubaugh's] conduct" so extreme that it "impaired [their] daily functioning." *Nammack v. Hampstead Pre-Owned*, Civ. No. DKC 19-1798, 2020 WL 1033589, at *5 (D. Md. Mar. 3, 2020); *Humbert v. O'Malley*, 2014 WL 1266673, at *17 (rejecting wrongfully arrested plaintiff's IIED claim). As such, this claim will be dismissed.

### 8. *Article 19 Claim*

Plaintiffs' claim against Corporal Blubaugh for violation of Article 19 of the Maryland Declaration of Rights will also be dismissed. Article 19 of the Maryland Declaration of Rights states "[t]hat every man, for any injury done to him in his person or property, ought to have remedy by the course of the Law of the land, and ought to have justice and right, freely without sale, fully

without any denial, and speedily without delay, according to the Law of the land." It "guarantee[s] access to the courts." *Johnson v. Maryland State Police*, 628 A.2d 162, 168 (Md. 1993). Plaintiffs provide no theory as to how Corporal Blubaugh's alleged misconduct deprived them of access to the courts or otherwise violated Article 19.

### 9. Respondeat Superior

Plaintiffs' standalone "*Respondeat Superior*" claim against Corporal Blubaugh will also be dismissed. *Respondeat Superior* is a doctrine that provides for supervisory liability, "not a separate cause of action." *Sterling v. Ourisman Chevrolet of Bowie Inc.*, 943 F. Supp. 2d 577, 601 (D. Md. 2013).

### 10. Takings Claims

Plaintiffs' claim that their property was wrongfully seized under Article III, § 40 of the Maryland Constitution is also subject to dismissal, though without prejudice. Article III, § 40 establishes the State's "eminent domain" power and provides that "the General Assembly shall enact no Law authorizing private property to be taken for public use without just compensation, as agreed upon between the parties, or awarded by a jury, being first paid or tendered to the party entitled to such compensation." In relation to this claim, Plaintiffs assert:

> Plaintiff(s) has/have a protected property interest and Plaintiff(s) was/were deprived of numerous protected property interests by the Defendants, their agents, and their employees when Defendant(s) investigated, charged, arrested, detained, placed in confinement, imprisoned, and prosecuted Plaintiff(s) as described above without probable cause, legal excuse, or justification and/or a valid arrest warrant.

(Am. Compl. ¶ 210.) Elsewhere, Plaintiffs allege:

> Plaintiffs were never provided with an itemization or inventory of the final disposition of goods that were seized from Associated and Starlite. As a result, Sheriff Gahler, Corporal Blubaugh, and the Harford County Sheriff's Office seized items purchased and owned by Plaintiffs without providing just compensation.

(*Id.* ¶ 118.)

18

These allegations are too vague to plausibly state a claim. To start, Plaintiffs are not clear about what property was wrongfully taken. The Court surmises that Plaintiffs are referencing some of the goods that were identified as stolen by Home Depot and thus returned by law enforcement. But it is unclear which items Plaintiffs believe were wrongfully seized. Further, the Amended Complaint is entirely lacking in detail regarding which actors took the goods, under what authority and circumstances, and whether the seizure was addressed in the state court proceedings. What is more, Plaintiffs do not clarify if and how any Defendants diverged from Maryland law in disposing of this property. Given the lack of these necessary details, the claim cannot proceed.

However, the Court will permit Plaintiffs the opportunity to attempt to amend their pleadings to state a "Takings" claim. *See Ostrzenski v. Seigel*, 177 F.3d 245, 252–53 (4th Cir. 1999) (Dismissal should be granted with leave to amend unless "it appears to a certainty that plaintiff cannot state a claim.") (quoting 5A C. Wright & A. Miller, Federal Practice and Procedure § 1357 (2d ed.1990)). Md. Code Ann., Bus. Reg. § 12-401 and Harford County Code § 188 lay out the process law enforcement officers must follow in seizing allegedly stolen goods from pawnshops and returning them to their alleged rightful owners. If Plaintiffs intend to argue that one or more Defendant failed to abide by those laws and therefore wrongfully deprived them of property, they should allege the facts underlying that claim and clarify which individuals took what unlawful actions. If they allege that Defendants followed those laws but that the laws are unconstitutional, they should clarify as much.[5]   In short, they must provide clear factual allegations, not vague accusations.

---

[5] Additionally, to the extent Plaintiffs intended to allege a "takings" claim under the U.S. Constitution or the Maryland Declaration of Rights, the same analysis applies.

19

### E. Sheriff Gahler

Turning to Sheriff Gahler, dismissal will be granted and denied for the same claims as for Corporal Blubaugh. Though it was Corporal Blubaugh and not Sheriff Gahler who allegedly provided the testimony that secured Plaintiffs' arrests, Plaintiffs allege sufficient involvement on the Sheriff's part to state plausible Fourth Amendment, Articles 24 and 26, malicious prosecution, and negligence claims against him.

Plaintiffs allege that Sheriff Gahler actively participated in all aspects of Corporal Blubaugh's investigation of Plaintiffs. (Am. Compl. ¶¶ 122–30.) Importantly, Plaintiffs specifically claim that Sheriff Gahler authorized Corporal Blubaugh's alleged misstatements and omissions to the grand jury because the Sheriff believed that wrongfully charging the innocent Plaintiffs would garner positive publicity. (*Id.*) In addition to the issues already addressed, these allegations raise the legal question of whether a law enforcement officer who does not provide misleading testimony may nevertheless be liable if he aids another officer in doing so.

The Fourth Circuit's decision in *Humbert v. Mayor & City Council of Baltimore City*, is instructive. 866 F.3d 546. In *Humbert*, the Fourth Circuit reinstated a jury verdict holding liable both an officer whose misleading testimony led to a warrant being issued for the plaintiff's arrest *and* two other officers who assisted and supervised the testifying officer. *Id.* at 552 n.2. Because their actions were instrumental in the plaintiff's arrest, the fact that these officers had not testified did not insulate them from direct liability under § 1983 and corresponding state law.

Here, as in *Humbert*, Plaintiffs have alleged that the Sheriff's conduct led to Corporal Blubaugh's allegedly dishonest testimony and their resultant wrongful arrests. As such, to the same extent that Plaintiffs have effectively pled claims against Corporal Blubaugh, they have also

pled them against the Sheriff. The claims dismissed against Corporal Blubaugh, however, will likewise be dismissed against the Sheriff, for the same reasons.

### F.  State Law Claims Against Maryland

Finally, the Articles 24 and 26, malicious prosecution, and negligence claims will also be allowed to proceed against Maryland, though all other claims will be dismissed. In its briefing, Maryland simply adopts the Sheriff Defendants' arguments as to the state law claims, which the Court has already addressed. (Maryland Second Mot. Dismiss, ECF No. 29.) As such, the only novel issue posed by the claims against Maryland relates to the application of the MTCA.

As explained, the MTCA makes Maryland liable for the discretionary acts of its law enforcement officers *unless* the officers acted with gross negligence or malice. While Plaintiffs have effectively pled gross negligence and malice, neither mental state has been proven, and it remains possible that Plaintiffs could prove that one of the Sheriff Defendants committed unlawful conduct without establishing gross negligence or malice. In such circumstances, Rule 8(d)(2) permits Plaintiffs to proceed against the State in the alternative. As such, the Articles 24 and 26, malicious prosecution, and negligence claims shall be allowed to proceed as to Maryland.

### IV.  Crossclaim

The Court now turns to Maryland's Crossclaim against Harford County. (Crossclaim, ECF No. 39.) The Crossclaim relates to Harford County's obligations under Md. Code Ann., State Fin. & Proc. § 9-108. That Section provides that when a plaintiff brings a lawsuit challenging a sheriff's law enforcement actions, a county "may obtain insurance to provide the coverage and defense necessary under the Maryland Tort Claims Act." Md. Code Ann., State Fin. & Proc. § 9-108(b). The statute further provides that if a county does not cover and defend the litigation, "an assessment for coverage and for payment of any litigation expenses, other than for compensation

21

for the time spent by any State employee working for the Attorney General, shall be set off from" State funds that would otherwise be provided to the county. Md. Code Ann., State Fin. & Proc. § 9-108(c). *Cf. Dotson v. Chester*, 937 F.2d 920, 927 (4th Cir. 1991) (explaining that this law requires "the counties either to carry insurance to cover claims against sheriffs or to reimburse the State for the costs of paying and defending claims").

At the outset of this matter, Harford County accepted tender of coverage and defense of the action, indicating its intent to utilize self-insurance to cover and defend the litigation under § 9-108(b). (*See* Moore Correspondence, Maryland Resp. to Harford First Mot. Dismiss Ex. A., ECF No. 22-1.) In subsequent filings with the Court, Harford County also acknowledged "its responsibility as an insurer for the sheriff and his deputies acting in a law enforcement function." (Harford Second Mot. Dismiss Mem. Supp. at 3, ECF No. 27-1.) Accordingly, attorneys with the Harford County Department of Law have been ably defending the Sheriff Defendants.

These facts notwithstanding, Maryland complains that Harford County "has not expressly stated to this Court that it will honor its obligation to cover and defend this case if it is dismissed as a party as contemplated by State Finance and Procurement § 9-108." (Crossclaim ¶ 17.) Harford County responds that it "has provided coverage and defense for the state personnel in this action and has never indicated that it will not continue to do so," but also asserts that it does not "have a duty to provide this coverage, let alone a duty to indemnify the State." (Mot. Dismiss Crossclaim Mem. Supp. at 6, ECF No. 41-1.) As such, Maryland asks the Court for "declaratory judgment pursuant to 28 U.S.C. § 2201 and/or Maryland Code, Courts and Judicial Proceedings § 3-409" that because Harford County accepted Maryland's tender, Harford County is required to cover and defend this action under § 9-108(b). (Crossclaim ¶ 27.) Harford County argues that Maryland's reading of the law is incorrect, and that regardless, there is no actual controversy at

this time. (Mot. Dismiss Crossclaim Mem. Supp.) Neither party addresses the Court's jurisdiction over the dispute, aside from Maryland's conclusory assertion that "[j]urisdiction and venue are proper under 28 U.S.C. §§ 1331, 1441 and 1446," because Plaintiffs' Complaint includes federal claims. (Crossclaim ¶ 8.) Presumably, the State intends to invoke the Court's supplemental jurisdiction on the grounds that the insurance dispute is "so related to" Plaintiffs' claims "that they form part of the same case or controversy." 28 U.S.C. § 1367.

For a claimant to have standing to invoke the Court's jurisdiction, he must allege a concrete injury that is "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks and citations omitted). "Ripeness, another justiciability doctrine, determines when a case or controversy is fit for federal judicial review" and prevents a federal court from engaging in "premature adjudication." *Trustgard Ins. Co. v. Collins*, 942 F.3d 195, 199 (4th Cir. 2019). Moreover, under the Declaratory Judgment Act and corresponding Maryland law, regardless of whether standing and ripeness exist, courts have "discretion to decide whether to declare the rights of litigants." *Id.* at 201–02. "Whether exercising this jurisdiction is appropriate must be 'informed by the teachings and experience [of the courts] concerning the functions and extent of federal judicial power.'" *Id.* (alterations in original) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995)).

Based on these considerations, courts routinely decline to render declaratory judgment on issues related to an insurer's alleged duty to indemnify a defendant for a hypothetical judgment. *See CX Reinsurance Co. Ltd. v. Leader Realty Co.*, Civ. No. JKB-15-3054, 2018 WL 2020182, at *2 (D. Md. May 1, 2018) (compiling cases); *Washington Metro. Area Transit Auth. v. Queen*, 597 A.2d 423, 426 n.6 (Md. 1991) ("Under Maryland law, declaratory judgment actions by or against the tortfeasor's liability insurer, in advance of a determination of liability in a tort suit, are normally

precluded except when the issues in the declaratory judgment action are independent and separable from the claims of the tort claim."). While questions regarding an insurer's duty to defend an ongoing lawsuit may present an actual controversy justifying intervention, questions regarding an insurer's obligation to pay a hypothetical judgment are typically considered either unripe or otherwise inappropriate for declaratory judgment. *See Trustgard*, 942 F.3d at 199.

Accordingly, the Court declines to exercise jurisdiction over the Crossclaim. Harford County has represented to the Court that it will defend this action, and the Court has no reason to expect that the County will attempt to renege on that commitment. Any disagreement regarding the various parties' obligations to pay a judgment remains hypothetical at this point, since Plaintiffs are quite a long way from proving any Defendant's liability. Maryland's argument that by accepting Maryland's tender of coverage Harford County bound itself to proceed under § 9-108(b) rather than § 9-108(c) raises a complex question of state law, and there do not appear to be any Maryland decisions on point. Additionally, the statutory scheme established by Md. Code Ann., State Fin. & Proc. § 9-108 renders the practical stakes of any dispute between Harford County and Maryland somewhere between limited and non-existent; whether Harford County decides to pay a (hypothetical) judgment directly pursuant to § 9-108(b), or decides to have the funds taken out of appropriated funds under § 9-108(c), the end result will be that Harford County pays for coverage and defense of the action. *See Pope v. Barbre*, 915 A.2d 448, 458 (Md. Ct. Spec. App. 2007) (explaining that even if the State "might have to 'front'" a judgment, "there is a fool-proof mechanism for State recovery of that money from [the relevant county] through the funding withholding provisions" of § 9-108(b)), *aff'd in part, modified in part and remanded*, 935 A.2d 699 (Md. 2007). Accordingly, the Crossclaim will be dismissed without prejudice to Maryland's

ability to seek compensation from Harford County in the event of a dispute regarding an actual judgment.

### V.    *Conclusion*

For the foregoing reasons, an order shall enter: (1) granting Harford County's motion to dismiss (ECF No. 27); (2) granting in part and denying in part Maryland's motion to dismiss (ECF No. 29); (3) granting in part and denying in part Sheriff Gahler, Corporal Blubaugh, and the Harford County Sheriff's Office's motion to dismiss (ECF No. 28); (4) denying Maryland's motion for summary judgment on its Crossclaim (ECF No. 40); and (5) granting Harford County's motion to dismiss the Crossclaim (ECF No. 41).  Further instruction regarding the structure and timing of discovery will be forthcoming.

DATED this 25 th day of November, 2020.

BY THE COURT:

James K. Bredar
Chief Judge