**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

JEFFREY LEDERGEBER, et al.                          *

    Plaintiffs                                            *

    v.                                                    *          Civil No.: BPG-20-1208

JUSTIN BLUBAUGH, et al.                            *

    Defendants                                           *

        *     *     *     *     *     *     *     *     *     *     *

## MEMORANDUM OPINION

Currently pending before the court are Plaintiffs' Motion for Summary Judgment[1] ("plaintiffs' Motion") (ECF No. 117), Defendants' Cross-Motion for Summary Judgment ("defendants' Cross-Motion") (ECF No. 119), Plaintiffs' Response to Defendants' Cross-Motion for Summary Judgment ("plaintiffs' Response") (ECF No. 122), Defendants' Reply in Support of Defendants' Cross-Motion for Summary Judgment ("defendants' Reply") (ECF No. 123), the State of Maryland's Joinder in Co-Defendants' Cross-Motion for Summary Judgment ("defendant State of Maryland's Motion") (ECF No. 125), and Plaintiffs' Response to Defendant State of Maryland's Joinder in Co-Defendants' Cross-Motion for Summary Judgment ("plaintiffs' Opposition") (ECF No. 127). The issues are fully briefed and no hearing is necessary. Loc. R. 105.6. For the reasons

---

[1] Plaintiffs title their Motion "Plaintiffs' Motion for Summary Judgment on Phase #1 Of This Case and Request for Hearing." (ECF No. 117). Plaintiffs contend that this is "Phase #1" of the case because discovery was limited by Chief Judge Bredar to determine "(1) whether probable cause existed for Plaintiff's arrests; and (2) whether Corporal Blubaugh materially misled the prosecution and grand jury regarding evidence against Plaintiffs." (ECF No. 117-1 at 4). Thus, plaintiffs argue, incorrectly, that "any Motion with respect to Sheriff Gahler and the State of Maryland [ ] is not ripe at this juncture," and a second "phase" of discovery must first occur before the court considers summary judgment with respect to Sheriff Gahler and the State of Maryland. (Id.) To the contrary, Chief Judge Bredar's parameters regarding discovery did not bifurcate this case to resolve only those claims against Corporal Blubaugh, and given the court's conclusion that Corporal Blubaugh did not mislead the prosecutor or make material misrepresentations or omissions before the grand jury, summary judgment in favor of all defendants is appropriate.

discussed herein, plaintiffs' Motion (ECF No. 117) is denied, defendants' Cross-Motion (ECF No. 119) is granted, and defendant State of Maryland's Motion (ECF No. 125) is granted.

## I. <u>BACKGROUND</u>

When the parties have filed cross motions for summary judgment, in "considering each individual motion, the court must take care to 'resolve all factual disputes and any competing, rational inferences in the light most favorable' to the party opposing that motion." <u>Rossignol v. Voorhaar</u>, 316 F.3d 516, 523 (4th Cir. 2003) (quoting <u>Wightman v. Springfield Terminal Ry. Co.</u>, 100 F.3d 228, 230 (1st Cir. 1996)).  The relevant facts are undisputed.  Plaintiffs are owners and employees of two Harford County, Maryland pawn shops.  (ECF No. 117-1 at 4).  Plaintiff Jeffery Ledergerber was the owner and operator of Starlite Coin and Pawn Shop LLC ("Starlite").  (<u>Id.</u>)  Plaintiff Edward Wolf was the owner and operator of Associated Pawn Brokers, Inc. ("Associated"), where plaintiffs James Baker and Charlotte Wolf were employed.  (<u>Id.</u>)

On a number of occasions, Patrick Humes—who is not a party to this dispute—stole merchandise from Home Depot, and sold the stolen goods to plaintiffs' pawn shops.  (<u>Id.</u> at 4-6).  Mr. Humes never indicated to plaintiffs that the goods were stolen, and instead claimed that he was a wholesaler.  (<u>Id.</u> at 5, 9).  Typically, plaintiffs would identify the current price of the item by looking it up on the internet and offer Mr. Humes half of what they believed to be the market value of the goods, which Mr. Humes always accepted without negotiation.  (<u>Id.</u> at 6, 24).  After each purchase, plaintiffs properly documented and reported the transactions in the Maryland Regional Automated Pawn Information Database ("RAPID") pursuant to the requirements of the state and local laws governing Harford County pawnbrokers, as set forth in Maryland Code, Business Regulation Article, § 12-301, <u>et seq</u> and Harford County Code § 188, <u>et seq</u>.  (<u>Id.</u> at 6-8).

On June 22, 2015, Mr. Humes was apprehended while attempting to steal merchandise from a Home Depot store.  (Id. at 4-5).  Mr. Humes was interviewed at the scene, where he admitted that he had committed one theft himself and often served as an accomplice to another individual who sold stolen merchandise "under the table" to a third pawn shop not owned by plaintiffs.  (Id. at 5).  On July 29, 2015, Corporal Blubaugh interviewed Mr. Humes for the first time.  (Id.)  The interview and RAPID records obtained by Corporal Blubaugh revealed that between May 2015 and June 2015, Mr. Humes engaged in 26 transactions and sold approximately 86 items to Associated. (ECF No. 119-1 at 4).  During the same period, Mr. Humes engaged in 11 transaction and sold approximately 31 items to Starlite.  (Id.)  Many of the stolen items were brand new and still in their original boxes.  (Id.)  Mr. Humes insisted that plaintiffs were unaware that the merchandise he sold them was stolen and that plaintiffs never directed him to steal items.  (ECF No. 117-1 at 5).  Mr. Humes told Corporal Blubaugh that, in addition to the stolen items, he also sold personal items which were not stolen, but could not recall what items he sold to which pawn shops.  (Id. at 5-6).

Corporal Blubaugh produced an investigative report on August 7, 2015, and a supplemental investigative report on August 12, 2015.  (Id. at 6).  Following Corporal Blubaugh's supplemental investigative report, no further investigation was conducted.  (Id.)  Corporal Blubaugh compiled his case files, including interviews with witnesses and Mr. Humes and documentation regarding the transactions between Mr. Humes and the pawn shops, and provided his entire investigative file to the State's Attorney's Office.  (ECF No. 119-1 at 5).  Former Assistant State's Attorney Christopher Smith, the first prosecutor assigned to the case against plaintiffs, did not bring any of the charges against plaintiffs to the grand jury.  (Id. at 6).  When Mr. Smith left the State's Attorney's Office, the case was reassigned to Assistant State's Attorney Salvatore Fili.  (Id.)  On

3

March 29, 2017, the case was presented to the grand jury, which returned indictments against plaintiffs for theft and theft scheme under the Maryland consolidated theft statute, Maryland Code, Criminal Law Article § 7-104.  (ECF No. 117-1 at 13, 119-1 at 6).  Plaintiffs were subsequently arrested.  (ECF No. 119-1 at 6).  After the indictments were returned, the Harford County Sheriff's Office held a press conference at which both Corporal Blubaugh and Sheriff Gahler, among others, spoke about plaintiffs' arrests.  (ECF Nos. 117-1 at 15, 117-54).

In March 2018, Charlotte Wolf was tried by jury.  (ECF Nos. 117-41, 117-42).  At trial, the State introduced the following evidence: (1) a document listing the items purchased from Mr. Humes by Charlotte Wolf, (2) photographs of those items, and (3) a picture of how Mr. Humes typically dressed when selling items to Associated.  (Id.)  At the conclusion of the State's case, Charlotte Wolf was acquitted on a motion for judgment of acquittal.  (Id.)  After this trial, the State entered a nolle prosequi as to the charges against James Baker and Edward Wolf.  (Id. at 16, ECF No. 117-56).  In June 2019, at the time of Jeffery Ledergerber's trial, two of the State's witnesses were unavailable: (1) the State's expert on the value of the stolen items, Bill Adams, who had been terminated from Home Depot, and (2) Patrick Humes who had died.  (ECF No. 117-1 at 16)  The trial nonetheless proceeded with a new expert, Mike Yeagey.  (Id.)  At the conclusion of the State's case, Jeffery Ledergerber was acquitted on a motion for judgment of acquittal.  (Id. at 16, n.19).

On March 26, 2020, plaintiffs filed suit in the Circuit Court for Harford County against the State of Maryland, Harford County, Harford County Sheriff's Office, Sheriff Gahler, and Corporal Blubaugh (collectively, "defendants").  (ECF No. 10).  Defendants removed the case to this court on May 12, 2020.  (ECF No. 1).  Plaintiffs alleged 13 counts against all defendants: (I) Battery, (II) False Arrest, (III) False Imprisonment, (IV) Intentional Infliction of Emotional Distress, (V) Malicious Prosecution, (VI) Negligence, (VI) Violation of Article 24 of the Maryland

Declaration of Rights, (VII) Violation of Article 26 of the Maryland Declaration of Rights, (IX) Violation of Article III, § 40 of the Maryland Constitution and Article 19 of the Maryland Declaration of Rights; (X) 42 U.S.C. § 1983 violations of plaintiffs' Fourth Amendment Right, (XI) 42 U.S.C. § 1983 violations of plaintiffs' Fifth Amendment Right, (XII) 42 U.S.C. § 1983 violations of plaintiffs' Fourteenth Amendment Right, and (XIII) Respondeat Superior.  (ECF No. 10).  Harford County and the State of Maryland each filed separate motions to dismiss.  (ECF Nos. 12, 20).  Sheriff Gahler, Corporal Blubaugh, and the Harford County Sheriff's Office jointly filed a motion to dismiss.  (ECF No. 13).

On November 30, 2020, in a Memorandum Opinion issued by Chief Judge Bredar, the court granted Harford County's motion to dismiss in its entirety.  (ECF No. 43).  Chief Judge Bredar also dismissed the case as to the Harford County Sheriff's Office.  (Id.)  The State of Maryland, Corporal Blubaugh, and Sheriff Gahler's motions were granted in part and denied in part.  (Id.)  In ruling on the motions to dismiss, Chief Judge Bredar reasoned that while "[t]he question is close," given the "lenient Rule 12(b)(6) standard," the court was unwilling to dismiss all of plaintiffs' claims because the Complaint "plausibly alleged that Corporal Blubaugh made omissions and misstatements that caused the prosecutor to pursue groundless charges and the grand jury to indict wrongfully."[2]  (Id. at 12).  Accordingly, as to Corporal Blubaugh and Sheriff Gahler, Counts V, VI, VII, VIII, and X remain.  (ECF No. 44)  As to defendant State of Maryland, Counts V, VI, VII, and VIII remain.  (Id.)

Chief Judge Bredar also concluded that plaintiffs were entitled to discovery regarding whether there were, as plaintiffs alleged, "a series of intentional misrepresentations on Corporal

---

[2] The court also denied the State of Maryland's motion for summary judgment on its Crossclaim, which sought a declaratory judgment that Harford County was responsible for the defense of the case and for payment of any judgment, (ECF No. 40), and granted Harford County's motion to dismiss the State of Maryland's Crossclaim.  (ECF No. 41).

Blubaugh's part [that] led the prosecution to pursue charges and the grand jury to indict when they otherwise would not have found probable cause." (Id.) Discovery was thus limited to: "(1) whether probable cause existed for Plaintiffs' arrests; and (2) whether Corporal Blubaugh materially misled the prosecution and grand jury regarding the evidence against Plaintiffs." (ECF No. 48 at 1, n.1).

Prior to filing their instant Motion, plaintiffs made efforts to obtain a transcript of the grand jury proceedings in state court. On November 10, 2021, plaintiffs filed a Motion for Disclosure of Content of Grand Jury Proceedings in the Circuit Court for Harford County, which defendants opposed. (ECF No. 114 at 1). On November 30, 2021, the Circuit Court denied plaintiffs' Motion without a hearing. (Id.) Plaintiffs filed a Motion for Reconsideration on December 9, 2021 and the Circuit Court held a hearing on that motion on May 2, 2022. (Id.) At the conclusion of the hearing, the Court denied plaintiffs' Motion for Reconsideration. (Id. at 2). On June 2, 2022, plaintiffs filed a Notice of Appeal of the Circuit Court's decision, which defendants moved to dismiss upon grounds that the appeal was untimely filed. (Id.) On July 1, 2022, plaintiffs filed a Notice of Voluntary Dismissal of their appeal. (Id. at 3). Plaintiffs now contend that "[n]o transcript of the proceeding exists," because at the time plaintiffs were indicted, "grand jury indictments were returned based upon prepared scripts written by either the State's Attorney's Office or a law enforcement officer – rather than a presentation of evidence and testimony." (ECF No. 117-1 at 13).

The discovery phase has now concluded and although plaintiffs were unable to obtain a transcript of the grand jury proceeding, they deposed all of the relevant individuals, including Corporal Blubaugh, Sheriff Gahler, and Salvatore Fili. In addition, Christopher Smith testified

during the hearing on plaintiffs' Motion for Reconsideration before the Circuit Court for Harford County.  (ECF Nos.117-4, 117-5, 117-53, 119-6).

## II.  <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A fact is properly considered "material" only if it might affect the outcome of the case under the governing law.  <u>Id.</u> The party moving for summary judgment has the burden of demonstrating the absence of any genuine issue of material fact.  Fed. R. Civ. P. 56(a); <u>Pulliam Inv. Co., Inc. v. Cameo Props.</u>, 810 F.2d 1282, 1286 (4th Cir. 1987).  On those issues for which the non-moving party will have the burden of proof, however, it is his or her responsibility to oppose the motion for summary judgment with affidavits or other admissible evidence specified in Federal Rule of Civil Procedure 56.  Fed. R. Civ. P. 56(c); <u>Mitchell v. Data Gen. Corp.</u>, 12 F.3d 1310, 1315-16 (4th Cir. 1993).  If a party fails to make a showing sufficient to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment is proper.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).

When reviewing a motion for summary judgment, the court does not evaluate whether the evidence favors the moving or non-moving party but considers whether a fair-minded jury could return a verdict for the non-moving party on the evidence presented.  <u>Anderson</u>, 477 U.S. at 252. In undertaking this inquiry, the court views all facts and makes all reasonable inferences in the light most favorable to the non-moving party.  <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).  The non-moving party, however, may not rest on its pleadings,

and must show that specific, material facts exist to create a genuine, triable issue. <u>Celotex</u>, 477 U.S. at 324. A "scintilla" of evidence in favor of the non-moving party, however, is insufficient to prevent an award of summary judgment. <u>Anderson</u>, 477 U.S. at 252. Further, "mere speculation" by the non-moving party or the "building of one inference upon another" cannot create a genuine issue of material fact. <u>Cox v. Cnty. of Prince William</u>, 249 F.3d 295, 299-300 (4th Cir. 2001). Summary judgment should be denied only where a court concludes that a reasonable jury could find in favor of the non-moving party. <u>Anderson</u>, 477 U.S. at 252. Where, as here, the parties file cross motions for summary judgment, "[t]he court must rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard." <u>Towne Mgmt. Corp. v. Hartford Acc. and Indem. Co.</u>, 627 F. Supp. 170, 171 (D. Md. 1985).

## III.   <u>DISCUSSION</u>

As noted above, five counts of plaintiffs' Complaint remain: (1) Malicious Prosecution (Count V); (2) Negligence (Count VI); (3) Violation of Article 24 of the Maryland Declaration of Rights (Count VII); (4) Violation of Article 26 of the Maryland Declaration of Rights (Count VIII); and (5) § 1983 Violation of Fourth Amendment Rights (Count X). (ECF Nos. 43, 44). Plaintiffs and defendants have filed cross motions for summary judgment as to all remaining Counts of the Complaint. (ECF Nos. 117, 119).

The issue in this case, as identified by Chief Judge Bredar, is whether plaintiffs have established "that Corporal Blubaugh made omissions and misstatements that caused the prosecutor to pursue groundless charges and the grand jury to indict wrongfully." (ECF No. 43 at 12). Each of the remaining counts turn on whether plaintiffs can satisfy the exception to the rule that indictments are conclusive evidence of probable cause, by offering evidence that Corporal

Blubaugh made material misrepresentations or omissions, or misled the prosecutor.  Plaintiffs argue that there is no evidence that plaintiffs committed theft or participated in a theft scheme, and therefore, Corporal Blubaugh must have provided false information, made material omission before the grand jury, or misled the prosecutor, without which the indictments would not have been returned for lack of probable cause.  (ECF No. 117-1 at 20-27).  Defendants contend that because plaintiffs have failed to offer any evidence of material misrepresentations or omissions, or that Corporal Blubaugh misled the prosecutor, defendants are entitled to summary judgment as a matter of law.  (ECF No. 119-1 at 1-2).

### A. Section 1983 Claim (Count X)

Plaintiffs and defendants each move for summary judgment on plaintiffs' § 1983 claim.  (ECF Nos. 117-1 at 27, 119-1 at 8).  Plaintiffs contend that there was insufficient evidence to establish probable cause, such that the indictments must have been based upon material misrepresentations or omissions before the grand jury.  (ECF No. 117-1 at 27).  Plaintiffs also contend that because Former Assistant State's Attorney Christopher Smith did not pursue indictments against plaintiffs, Corporal Blubaugh must have pressured or misled Assistant State's Attorney Salvatore Fili into bringing the charges to the grand jury.  (Id. at 11).  Defendants argue that Corporal Blubaugh is entitled to absolute immunity for his testimony as a witness before the grand jury and for actions taken in preparation of that testimony (i.e., speaking with the prosecutor, Mr. Fili).  (Id. at 10-11).  Defendants further contend that the indictment of plaintiffs is conclusive evidence of probable cause and can be disturbed only with evidence that Corporal Blubaugh made false statements, omissions, or misled the prosecutor, and because plaintiffs have failed to identify any such evidence, defendants are entitled to summary judgment as a matter of law.  (ECF No. 119-1 at 8-9).

As detailed by Chief Judge Bredar, the court interprets plaintiffs' § 1983 claim "as one 'founded on a Fourth Amendment seizure that incorporates [certain] elements of the analogous common law tort of malicious prosecution.'"  (ECF No. 43 at 10 (quoting Massey v. Ojaniit, 759 F.3d 343, 356 (4th Cir. 2014)).  Thus, in order to prove malicious prosecution, plaintiffs must establish that: the defendants have "seized plaintiff pursuant to legal process that was not supported by probable cause" and that "the criminal proceedings have terminated in plaintiff's favor."  (Id. (quoting Durham v. Horner, 690 F.3d 183, 188 (4th Cir. 2012)).  It is undisputed that plaintiffs were arrested, and therefore seized, and that the prosecutions terminated in plaintiffs' favor.  (ECF No. 117-1 at 13-18).  Thus, the issue is whether the legal process against plaintiffs was supported by probable cause.  On that issue, Chief Judge Bredar observed that:

> [t]he grand jury's involvement undoubtedly undermines [p]laintiffs' claims, as the Fourth Circuit has repeatedly explained that "an indictment, 'fair upon its face,' returned by a 'properly constituted grand jury,' conclusively determines the existence of probable cause."  Nonetheless, "notwithstanding the conclusive effect" of an indictment, "a grand jury's decision to indict[ ] will not shield a police officer who deliberately supplied misleading information that influenced the decision."

(ECF No. 43 at 10-11 (quoting Durham, 690 F.3d at 189)).  Absent a finding that the officer has lied to or misled the prosecutor, there is "no 'authority for looking into and revising the judgment of the grand jury upon the evidence, for the purpose of determining whether or not the finding was founded upon sufficient proof.'"  Kaley v. United States, 571 U.S. 320, 338 (2014) (quoting Costello v. United States, 350 U.S. 359, 362 (1956)).

Here, indictments were returned against plaintiffs, and therefore, probable cause is conclusively established.  The operative question is whether plaintiffs can establish that Corporal Blubaugh misled the prosecutor, made materially misleading statements, or omitted information before the grand jury.  "[A] police officer is not liable for a plaintiff's unlawful seizure following indictment 'in the absence of evidence that [the officer] misled or pressured the prosecution."

Evans v. Chalmers, 703 F.3d 636, 648 (4th Cir. 2012).   Indeed, "[f]or a Fourth Amendment violation to be found, 'the false statements or omission must be "material,"' that is, "necessary to the finding of probable cause."'   (ECF No. 43 at 11 (quoting Miller v. Prince George's Cnty., 475 F.3d 621, 630 (4th Cir. 2007)).   Additionally, the misstatements or omissions must be made 'deliberately or with a reckless disregard for the truth.'"   (Id.)

Defendants assert that in accordance with the Supreme Court's decision in Rehberg v. Paulk, 566 U.S. 356, 367 (2012), Corporal Blubaugh is absolutely immune from liability for all claims based upon his testimony before the grand jury.   (ECF No. 119-1 at 10).   Plaintiffs object to the application of Rehberg and contend that Corporal Blubaugh remains subject to liability for "failing to supply relevant information to the grand jury."   (ECF No. 122 at 2).   In Rehberg, the Court was asked to determine whether the well-established rule granting trial witnesses absolute immunity from § 1983 claims applied with equal force to testifying grand jury witnesses.   566 U.S. at 361.   The Court held that "a grand jury witness has absolute immunity from any § 1983 claim based on the witness' testimony," reasoning that to hold otherwise would compromise the "vital secrecy" of grand jury proceedings.   Id. at 367, 375.   When a grand jury witness is a member of law enforcement, denying the grand jury witness absolute immunity would force officers to "defend against claims based on their testimony, [and] their energy and attention would be diverted from the pressing duty of enforcing the criminal law."   Id. at 369.   The Court further reasoned that perjury was an adequate deterrent in preventing false grand jury testimony.   Id. at 367.   While Rehberg provides for absolute immunity for statements made during a grand jury witness' testimony, absolute immunity does not "extend[ ] to all activity that a witness conducts outside of the grand jury room."   Id. at 370 n.1.   Although absolute immunity shields a grand jury witness from liability for testimony given before the grand jury and activity taken in preparation for that

testimony, including conversations with the prosecutor, absolute immunity does not extend to "law enforcement officials who falsify affidavits and fabricate evidence concerning an unsolved crime." Id. See also Massey, 759 F.3d at 189 (absolute immunity does not apply where grand jury witness falsified police reports that were later relied on in grand jury testimony).

The Fourth Circuit's decision in Everette-Oates v. Chapman, No. 20-1093, 2021 WL 3089057 (4th Cir. July 22, 2021) is instructive.  In Everette-Oates, the Fourth Circuit upheld a decision granting absolute immunity to a law enforcement officer who testified before the grand jury and was sued for malicious prosecution on the theory that she allegedly fabricated and concealed evidence in her grand jury testimony.  Id. at *3-*4 n.3.  The Court held that the grand jury witness "is absolutely immune from any § 1983 claim based on her testimony.  And that absolute immunity is broad in scope, extending to claims that [the grand jury witness] presented or conspired to present false evidence, and to claims based on [the grand jury witness'] preparatory activity in advance of testifying."  Id. at *5.

Here, like in Everette-Oates, Corporal Blubaugh is immune from liability for plaintiffs' claims.  All of plaintiffs' arguments in support of their § 1983 claim rely entirely on Corporal Blubaugh's allegedly false or misleading statements or omissions before the grand jury.  (ECF No. 117-1 at 23-26).  Plaintiffs argue that absolute immunity does not extend to omissions on the basis that "testimony" includes only what a witness says, and not what a witness does not say.  (ECF No. 122 at 2).  Nothing in Rehberg or Everette-Oates, however, suggests that immunity applies only to material misrepresentations and not omissions.  See Everette-Oates, 2021 WL 3089057 at *4 (grand jury witness is entitled to "absolute immunity from any § 1983 claim based on the witness' testimony.") (citing Rehberg, 566 U.S. at 369-70).  Further, plaintiffs provide no logical reason to distinguish between material misrepresentations and omission for purposes of immunity.

Indeed, whether plaintiffs contend that Corporal Blubaugh's liability hinges on a misrepresentation or omission of material fact, the witness' "grand jury testimony is the gravamen of [plaintiffs] claims against [him.]" Everett-Oates, 2021 WL 3089057, at *5. Thus, because plaintiffs' claim centers on Corporal Blubaugh's grand jury testimony, as well as actions taken in preparation for that testimony (i.e., speaking with Mr. Fili), Corporal Blubaugh is entitled to claim absolute immunity from plaintiffs' § 1983 claim.

Notwithstanding the existence of absolute immunity, plaintiffs seek to undermine the conclusive evidence of probable cause by identifying evidence which they believe negates probable cause. (ECF No. 117-1 at 14, 19-26). This attempt is misguided. Even if absolute immunity did not to preclude liability in this case, plaintiffs may only succeed on their § 1983 claim by offering evidence that Corporal Blubaugh made material misrepresentations or omissions before the grand jury, or misled the prosecutor. Durham, 690 F.3d 189. In plaintiffs' Complaint, plaintiffs alleged a series of facts which they claimed were withheld from the prosecutor and the grand jury. (ECF No. 23 at 21-23). It was on the basis of these allegations that Chief Judge Bredar denied defendants' motions to dismiss and allowed plaintiffs the opportunity to engage in discovery, stating that "[p]laintiffs have plausibly alleged that a series of intentional misrepresentations on Corporal Blubaugh's part led the prosecution to pursue charges and the grand jury to indict when they otherwise would not have found probable cause." (ECF No. 43 at 12).

The vast majority of the "material facts" relate to plaintiffs' contention that plaintiffs did not violate and were not charged with violating state and local laws governing the operation of pawn shops. (ECF No. 117-1 at 23-24). Other allegedly material facts include that other pawn shops that dealt with Mr. Humes and his accomplice "under the table" were not charged with any

crimes (Id. at 25) and that Corporal Blubaugh did not have evidence to support his valuation of the items sold to plaintiffs.  (Id. at 25-26).  While plaintiffs maintain that these facts "negate probable cause in this case," plaintiffs do not offer any evidence that Corporal Blubaugh misrepresented or omitted any of these facts in his presentation to the grand jury.  (Id. at 22-23).  Although plaintiffs have pursued discovery to obtain evidence to support these assertions, they now fail to offer evidence of even a single material misrepresentation or omission made by Corporal Blubaugh before the grand jury.  Merely arguing that, in plaintiffs' opinion, there was insufficient evidence to support a probable cause finding, is inadequate to establish that Corporal Blubaugh misrepresented or omitted evidence in his testimony before the grand jury.

Even when considering all of the facts which plaintiffs contend negate probable cause in this case, there remains a sufficient basis for probable cause against plaintiffs.  As Chief Judge Bredar observed: "[t]hough [p]laintiffs' briefing contains much protestation that no evidence supported their indictments, [p]laintiffs freely admit the actus reus component of the crime with which they were charged by acknowledging that they purchased and possessed stolen goods. Defendants make a strong case that the evidence showing [p]laintiffs repeatedly purchased brand-new goods at half price from [Mr.] Humes was sufficient to establish probable cause as a matter of law, any exculpating facts notwithstanding."  (ECF No. 43 at 6).  Plaintiffs fail to demonstrate that the "allegedly concealed evidence was 'material' to the grand jury's probable cause determination."  Everette-Oates, 2021 WL 70289868, at *6.  Thus, even if plaintiffs' claims were not subject to absolute immunity, plaintiffs point to no evidence to support their contention that their proffered facts were material to the determination of probable cause.

Plaintiffs also argue that because Mr. Smith declined to indict plaintiffs, Corporal Blubaugh must have misled Mr. Fili, the prosecutor who was assigned to plaintiffs' case after

Mr. Smith left the State's Attorney's Office, into pursuing the charges against plaintiffs. (ECF No. 117-1 at 10-11). Defendants counter that Mr. Smith did not decline to indict the case for lack of probable cause, both Mr. Smith and Mr. Fili believe the charges against plaintiffs were supported by probable cause, and Mr. Fili and Corporal Blubaugh spoke honestly and openly about the case prior to the grand jury proceedings. (ECF No. 119-1 at 10). Plaintiffs assert that Mr. Smith "declined to indict the case based upon the evidence collected and the investigation by Corporal Blubaugh." (ECF No. 117-1 at 10). To the contrary, Mr. Smith stated in an affidavit, that he "did not refuse to present these cases to the grand jury." (ECF No. 117-52 at 2). Further, while testifying before the Circuit Court for Harford County, Mr. Smith testified that he never "refuse[d] to indict this case," and believed that "probable cause was there to charge, but [he] felt more investigation and corroboration was needed to actually reach the trial standard of beyond a reasonable doubt." (ECF No. 117-53 at 35-36).

Once Mr. Fili was assigned to the case, he was given Corporal Blubaugh's full investigative file, including documents regarding the transactions between plaintiffs and Mr. Humes, witness interviews, and all other information compiled throughout the investigation. (ECF No. 119-1 at 5). As emphasized by the court in Everette-Oates, the uncontested fact that Corporal Blubaugh provided Mr. Fili with his entire investigative file precludes any inference that he deliberately concealed evidence from the prosecutor. See Everette-Oates, 2021 WL 3089057, at *4 (the undisputed evidence that the grand jury witness provided the prosecutor "with her full investigative file preclude[d] any inference that '[the grand jury witness] deliberately fabricated or concealed' evidence[.]"). Plaintiffs fail to identify any evidence in the record that was not provided to Mr. Fili. In his deposition, Mr. Fili stated that at no point did he feel that Corporal Blubaugh withheld information from him or lied to him. (ECF No. 117-5 at 38). Rather, the record demonstrates that

Mr. Fili was clearly aware of the evidence against plaintiffs ahead of the grand jury proceeding. For example, six days before the grand jury proceeding, Corporal Blubaugh and Mr. Fili exchanged emails regarding the evidence against Edward Wolf.  (ECF No. 117-31).  While Mr. Fili expressed concern about whether they could "make [their] burden of proof beyond a reasonable doubt," at trial, neither Mr. Fili nor Corporal Blubaugh indicated that the charges were unsupported by probable cause.  (Id. at 2).  Mr. Fili stated that he believed there was probable cause to support the charges against all plaintiffs.  (ECF No. 117-5 at 36-40).  Plaintiffs have failed to offer any evidence that Corporal Blubaugh "lied to or misled the prosecutor" in any way, and have not presented sufficient evidence to generate a material dispute on this issue.  See Massey, 759 F.3d at 357.  In sum, Corporal Blubaugh is entitled to absolute immunity with respect to his testimony before the grand jury and, even if that immunity does not extend to all activity undertaken by Corporal Blubaugh, plaintiffs have failed to offer any evidence that Corporal Blubaugh made material misrepresentations or omissions before the grand jury or misled the prosecutor. Accordingly, plaintiffs' Motion (ECF No. 117) is denied and defendants' Cross-Motion (ECF No. 119) is granted with respect to Corporal Blubaugh.  The court now turns to consideration of plaintiffs' state law claims.[3]

### B. Malicious Prosecution (Count V)

Plaintiffs and defendants move for summary judgment on plaintiffs' malicious prosecution claim, citing the same reasons advanced with respect to plaintiffs' § 1983 claim.  (ECF Nos. 117-1 at 30, 119-1 at 13).  Plaintiffs additionally argue that Corporal Blubaugh acted with malice "in instituting the criminal proceeding and for continuing the criminal proceeding" against plaintiffs,

---

[3] In plaintiffs' Response, plaintiffs argue that the court should decline to exercise jurisdiction over plaintiffs' state law claims.  (ECF No. 122 at 9).  Plaintiffs articulate no compelling reason why, at this late stage in the proceedings, the court should choose not to resolve all of plaintiffs' claims. Accordingly, the court exercises its discretion to retain and resolve all of plaintiffs' claims, including plaintiffs' state law claims.

which was unsupported by probable cause.  (ECF No. 122 at 9).  Defendants contend that plaintiffs cannot "circumvent the grand jury's conclusive determinations of probable cause," and fail to offer any evidence of false statements or omissions made before the grand jury.  (ECF No. 119-1 at 13). In order to succeed on a state common law malicious prosecution claim, plaintiffs must establish that: (1) a criminal proceeding was initiated by the defendant against the plaintiff, (2) the proceeding terminated in favor of the plaintiff, (3) the absence of probable cause for the proceeding, and (4) malice, or, a primary purpose in instituting the proceeding was other than that of bringing the plaintiff to justice.  See DiPino v. Davis, 729 A.2d 354, 373 (Md. 1999) (internal citation omitted).  "Malice," as embodied in the elements of a malicious prosecution claim, "may be inferred from the lack of probable cause."  Montgomery Ward v. Wilson, 664 A.2d 916, 924 (Md. 1995).  For the reasons set forth above, plaintiffs offer no evidence of material misrepresentations or omissions, and therefore, have failed to offer evidence establishing the absence of probable cause.  As a result, plaintiffs are not entitled to an inference of malice, and must present independent evidence of an improper motive.  When malice cannot be "inferred from the lack of probable cause," there must be evidence establishing "heinous conduct, characterized by fraud, ill will, spite, evil, motive, conscious wrongdoing, or intent to injure."  DiPino, 729 A.2d at 374 (quoting Shoemaker v. Smith, 725 A.2d 549 (Md. 1999)).

Plaintiffs argue that Corporal Blubaugh "had an improper purpose in pursuit of charges against [p]lantiffs because of his vendetta against [p]laintiffs."  (ECF Nos. 117-1 at 30-31, 122 at 12).  In plaintiffs' Motion, they suggest several possible "improper purpose[s]" for Corporal Blubaugh's investigation, including that (1) Corporal Blubaugh was motivated by a desire to "make a name for himself," (2) the charges were retaliation for an unrelated prior situation where Corporal Blubaugh, unsuccessfully attempted to bring charges against plaintiffs; and (3) Corporal

Blubaugh was attempting to fulfill a campaign promise related to the opioid epidemic at the direction of Sheriff Gahler.  (ECF Nos. 122 at 4 n.13, ECF No. 117-1 at 30-31).  Plaintiffs cite to nothing in the record to support these contentions.  Nor can the court, upon a thorough review of the record, discern any evidence to support plaintiffs' theories.  Plaintiffs' theories, without more, are wholly inadequate to create a genuine issue of fact on this issue.

Plaintiffs additionally argue that the court should impose "post-indictment liability" upon Corporal Blubaugh for "fail[ing] to disclose exculpatory evidence after the indictments."  (ECF No. 122 at 5, 9).  "A police officer who withholds exculpatory information from the prosecutor can be liable under both section 1983 and the state common law."  Goodwin v. Metts, 885 F.2d 157, 162 (4th Cir. 1989).  Moreover, "a police officer's actions in failing to turn over materially exculpatory evidence to a prosecutor [may] 'violate [the § 1983 plaintiff's] constitutional rights,'" Carter v. Burch, 34 F.3d 257, 264 (4th Cir. 1994), particularly where "the officer's failure to disclose the exculpatory information deprived the § 1983 plaintiff of their right to a fair trial."  Taylor v. Waters, 81 F.3d 429, 436 n.5 (4th Cir. 1996).

Plaintiffs do not point to any new exculpatory evidence obtained after the grand jury returned indictments against plaintiffs.  The record suggests that any exculpatory evidence related to the charges against plaintiffs existed, and was known to Corporal Blubaugh and Mr. Fili, prior to the grand jury proceeding.  Plaintiffs acknowledge that Corporal Blubaugh concluded his investigation on August 12, 2015, and provided his full investigative file to Mr. Fili before plaintiffs were indicted.  (ECF Nos. 117-1 at 9, 119-1 at 6).  Because all of the evidence compiled by Corporal Blubaugh, including any exculpatory evidence, was contained in the investigative file, there is no evidence that Corporal Blubaugh "fail[ed] to turn over materially exculpatory evidence to the prosecutor."  Carter, 34 F.3d at 264.  Plaintiffs cannot establish evidence of malice or evidence of Corporal Blubaugh's failure to disclose exculpatory evidence after the indictments

were returned, and therefore, plaintiffs' Motion (ECF No. 117) is denied and defendants' Cross-Motion (ECF No. 119) is granted with respect to Corporal Blubaugh.

### C. Articles 24 and 26 of the Maryland Declaration of Rights (Counts VII and VIII)

Plaintiffs and defendants move for summary judgment on Counts VII and VIII of plaintiffs' Complaint, which state claims for violations of Articles 24 and 26 of the Maryland Declaration of Rights, respectively.  In plaintiffs' Motion, they rely on an excerpt of Chief Judge Bredar's Memorandum Opinion denying defendants' motion to dismiss on the same grounds as plaintiffs' § 1983 claim.  (ECF No. 117-1 at 31).  In plaintiffs' Response, however, they argue— for the first time—that Articles 24 and 26 need not be interpreted in pari materia with the Fourth Amendment.  (ECF No. 122 at 9-12).  Specifically, plaintiffs contend that the Fourth Amendment "sets the floor for rights in the State of Maryland," and that Maryland courts have, under some circumstances, diverged from the interpretation applied to the federal Constitution.  (ECF No. 122 at 10).  Plaintiffs cite to cases, in contexts different from this case, which held that Maryland courts are not bound to apply the interpretation of federal courts when considering an Article 24 claim. See Smith v. Bortner, 998 A.2d 369, 381 (Md. Ct. App. 2010) (declining to apply the interpretation of the federal constitution in case involving state law challenge to excessive force); Conaway v. Deane, 932 A.2d 571 (Md. 2007) (declining to apply the interpretation of the federal constitution in case involving same sex marriage).  "Unless there is good reason to do otherwise," however, "state constitutional provisions [such as Article 24] are in pari materia with their federal counterparts or are the equivalent of federal constitutional provisions or generally should be interpreted in the same manner as federal provisions."  Allmond v. Dep't of Health and Mental Hygiene, 141 A.3d 57, 67 (Md. 2016).

Plaintiffs argue that "[i]t is well-established that the concepts of equal protection and due process embodied in Article 24, similar to the Fourteenth Amendment, are viewed as somewhat flexible and dynamic in order to accommodate advancements in the contemporary political, economic, and social climate." (ECF No. 122 at 11 (quoting Conaway, 932 A.2d at 625)). Plaintiffs fail to cite to any caselaw in which a Maryland court has found good reason to decline to interpret Articles 24 or 26 in pari materia with the federal Constitution in the context of a malicious prosecution case.  Moreover, plaintiffs do not articulate any reason why the court should conclude that a different interpretation would be appropriate in this case.  Nor do plaintiffs identify how the court's interpretation of the Articles 24 and 26 claims would differ if the court chose to interpret the claims independent of their federal counterpart.  Instead, plaintiffs insist that "law enforcement officers [should not] be shielded from liability when they lie to grand juries."  (Id.) As detailed above, this is precisely the interpretation applied by federal courts in considering a federal malicious prosecution challenge—liability attaches if the witness made material misrepresentations or omissions before the grand jury or misled the prosecutor.  Massey, 759 F.3d at 357 ("officers may be liable to a wrongfully indicted [criminal] defendant when they have, e.g., lied to or misled the prosecutor or grand jury.").  Thus, the court will interpret plaintiffs' Articles 24 and 26 claims in pari materia with the federal constitution, and therefore, for the same reasons detailed above as to why plaintiffs' § 1983 claim fails, plaintiffs' Maryland Declaration of Rights claims also fail.  Accordingly, plaintiffs' Motion (ECF No. 117) is denied and defendants' Cross-Motion (ECF No. 119) is granted with respect to Corporal Blubaugh.

### D. Negligence (Count VI)

Plaintiffs move for summary judgment on their negligence claim, again relying on an excerpt of Chief Judge Bredar's Memorandum Opinion.  (ECF No. 117-1 at 33).  Chief Judge

Bredar denied defendant's motion to dismiss because plaintiffs adequately alleged that Corporal

Blubaugh acted with gross negligence in stating their claims under Articles 24 and 26 of the

Maryland Declaration of Rights and, thus, alleged facts sufficient to preclude application of

Maryland Tort Claims Act ("MTCA") immunity for public officials. (ECF No. 117-1 at 33

(quoting ECF No. 43 at 15)).   Defendants contend that plaintiffs have failed to establish gross

negligence or actual malice, such that Corporal Blubaugh is entitled to MTCA immunity from

plaintiffs' negligence claim.   (ECF No. 119-1 at 14-15).

The parties' arguments focus exclusively on whether Corporal Blubaugh is entitled to

immunity from tort liability.   (ECF Nos. 117-1 at 32-33, 119-1 at 14-15).   Plaintiffs contend that

the immunity cannot apply because Corporal Blubaugh acted with actual malice in pursuing the

charges against plaintiffs.   (ECF No. 122 at 12).   Defendants counter that there is no evidence of

actual malice in this case.   (ECF No. 119-1 at 14-15).   As Chief Judge Bredar noted, while "[c]ourts

have regularly found law enforcement officers owe an enforceable duty of care to individuals

arrested as a result of their testimony," under Maryland law, "a public official is immune from tort

liability in negligence if: "(1) he or she [is] a public official; and (2) his or her tortious

conduct . . . occurred while performing discretionary acts in furtherance of official duties; and (3)

the acts [were] done without malice."   (ECF No. 43 at 15 (quoting Humbert v. O'Malley, No.

WDQ-11-440, 2014 WL 1266673, *17-*18 (D. Md. Mar. 25, 2014)).   It is undisputed that

Corporal Blubaugh is a public official who was performing discretionary acts in furtherance of his

official duties.   (ECF No. 119-1 at 14).   In evaluating Corporal Blubaugh's assertion of tort

immunity, Chief Judge Bredar articulated the applicable law:

> In the MTCA context, "malice" means that an action is undertaken "without legal
> justification or excuse, but with an evil or rancorous motive influenced by hate, the
> purpose being to deliberately and willfully injure the plaintiff."   Thacker v. City of
> Hyattsville, 762 A.2d 172, 189 (Md. App. Ct. 2000).   Malice may "be inferred from

> an arrest that was so lacking in probable cause and legal justification as to render [the defendant officer's] stated belief in its existence unreasonable and lacking in credibility." McDaniel v. Arnold, 898 F.Supp.2d 809, 850 (D. Md. 2012) (quoting Thacker, 762 A.2d 193-94).  "Gross negligence" typically means that an officer's actions are "so heedless and incautious as necessarily to be deemed unlawful and wanton, manifesting such a gross departure from what would be the conduct of an ordinarily careful and prudent person under the same circumstances so as to furnish evidence of indifference to consequences." Henry v. Purnell, 652 F.3d 524, 536 (4th Cir. 2011) (quoting State v. Albrecht, 649 A.2d 336, 348 (Md. 1994)).

(ECF No. 43 at 13-14).

Plaintiffs summarily assert that "Corporal Blubaugh did not perform his law enforcement functions honestly or in good faith when he actively misled both the prosecutor and grand jury with false statements and material omissions." (ECF No. 122 at 12).  For the reasons stated above, plaintiffs have failed to offer any evidence establishing that defendants acted with actual malice or gross negligence[4] and therefore, Corporal Blubaugh is entitled to immunity from tort liability. Accordingly, plaintiffs' Motion (ECF No. 117) is denied and defendants' Cross-Motion (ECF No. 119) is granted with respect to Corporal Blubaugh.

**E. Claims Against Sheriff Gahler**

With respect to Sheriff Gahler, defendants move for summary judgment on Counts V, VI, VII, VIII, and X arguing that there is no evidence that Sheriff Gahler directed Corporal Blubaugh's interactions with the prosecutor or grand jury.  (ECF No. 119-1 at 15).  Plaintiffs contend that because Chief Judge Bredar limited discovery to whether Corporal Blubaugh made a material misrepresentation or omission before the grand jury or misled the prosecutor, consideration of summary judgment is not yet appropriate as to Sheriff Gahler.  (ECF No. 117-1 at 4).  On this

---

[4] Plaintiffs offer no substantive argument regarding gross negligence.  Instead, plaintiffs rely on an excerpt from Chief Judge Bredar's Memorandum Opinion denying defendant's motion to dismiss plaintiffs' negligence claim because "[p]laintiffs plausibly alleged gross negligence in relation to the Articles 24 and 26 claims."  (ECF No. 117-1 at 33). For the reasons stated above, plaintiffs have failed to prove their Articles 24 and 26 claims, and therefore, plaintiffs may not rely on those claims as evidence of gross negligence.  In the absence of any other argument to support a finding of gross negligence, plaintiffs present no basis upon which to deny MTCA immunity to Corporal Blubaugh.

issue, Chief Judge Bredar noted as instructive the Fourth Circuit's decision in <u>Humbert v. Mayor &</u> <u>City Council of Baltimore</u>, 866 F.3d 546, 552 n.2, in which "the Fourth Circuit reinstated a jury verdict holding liable both an officer whose misleading testimony led to a warrant being issued for the plaintiff's arrest and two other officers who assisted and supervised the testifying officer." (ECF No. 43 at 20). Chief Judge Bredar reasoned that an individual who does not testify before the grand jury may, nonetheless, be liable if "their actions were instrumental in the plaintiff's arrest." (<u>Id.</u>) In denying defendants' motion to dismiss, Chief Judge Bredar concluded that Sheriff Gahler may be liable if he "actively participated in all aspects of Corporal Blubaugh's investigation of [p]laintiffs," including if, as plaintiffs alleged, Sheriff Gahler "authorized Corporal Blubaugh's alleged misstatements and omissions to the grand jury because the Sheriff believed that wrongfully charging the innocent [p]laintiffs would garner public publicity." (ECF No. 43 at 20).

Here, it is undisputed that Sheriff Gahler did not provide the testimony that resulted in plaintiffs' arrests. Thus, Sheriff Gahler is only liable if plaintiffs can establish that his conduct led to materially misleading testimony by Corporal Blubaugh which caused the grand jury to wrongfully indict plaintiffs. Plaintiffs do not contend that Sheriff Gahler assisted or supervised Corporal Blubaugh in the handling of plaintiffs' case. In fact, plaintiffs' Motion contains only an isolated reference to Sheriff Gahler, regarding statements made during a press conference that followed the return of the indictments. (ECF No. 117-1 at 15). Further, while plaintiffs' summarily assert that the arrests of plaintiffs helped fulfill a campaign promise of Sheriff Gahler, plaintiffs cite to nothing in the record to support this assertion. (<u>Id.</u> at 3).

Plaintiffs deposed Sheriff Gahler with respect to whether he "authorized Corporal Blubaugh's alleged misstatements and omissions to the grand jury." (ECF Nos. 43 at 20, 119-6). In his deposition, Sheriff Gahler stated that he did not speak to Corporal Blubaugh prior to his testimony before the grand jury. (ECF No. 119-6 at 3-5). During his deposition, Corporal

Blubaugh also confirmed that he did not speak to Sheriff Gahler prior to the grand jury proceedings.  (ECF No. 117-4 at 62).  Additionally, Sheriff Gahler stated that did not speak to Corporal Blubaugh about the content of Corporal Blubaugh's grand jury testimony after the indictments were returned.  (ECF No. 119-6 at 3-5).  Unlike the officers in <u>Humbert</u>, plaintiffs offer no evidence that Sheriff Gahler "provided input," "reviewed" or in any way assisted or supervised Corporal Blubaugh in the preparation of his grand jury testimony.  <u>Humbert</u>, 866 F.3d at 552 n.2.  In the absence of any evidence that Sheriff Gahler directed Corporal Blubaugh's actions, and in light of the court's conclusions as to Corporal Blubaugh, defendant's Cross-Motion (ECF No. 119) is granted with respect to Sheriff Gahler.

### F. <u>Claims Against State of Maryland</u>

Defendant State of Maryland moves for summary judgment on Counts V, VI, VII, and VIII of plaintiffs' Complaint, stating that because the State is being sued in its capacity as the party potentially responsible for the conduct of Sheriff Gahler and Corporal Blubaugh, if defendants' Motion is granted, "judgment must be granted in favor of the State as well."  (ECF No. 125 at 1). Although plaintiffs maintain that summary judgment is premature as to Sheriff Gahler at this time, (ECF No. 117-1 at 4), plaintiffs agree that, if defendants' Motion is granted as to Sheriff Gahler and Corporal Blubaugh, "judgment should be granted in favor of the State as well."  (ECF No. 127 at 1).  Thus, in light of the court's grant of summary judgment in favor of defendants Corporal Blubaugh and Sheriff Gahler, the court also grants defendant State of Maryland's Motion (ECF No. 125).

## IV. <u>CONCLUSION</u>

For the foregoing reasons, plaintiffs' Motion (ECF No. 117) is denied, defendants' Cross-Motion (ECF No. 119) is granted, and defendant State of Maryland's Motion (ECF No. 125) is granted.  A separate Order will follow.


Date: August 24, 2023

/s/

Beth P. Gesner
Chief United States Magistrate Judge